[No. B144094. Second Dist., Div. Three. Feb. 27, 2001.]

ANTHONY FULLER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
IPC INTERNATIONAL CORPORATION et al., Real Parties in Interest.

**COUNSEL**

Corsino & Sutherland, John M. Sutherland, Janice M. Corsino; Lund & Caplan and Richard A. Caplan for Petitioners.

No appearance for Respondent.

Shaw and Terhar, John W. Shaw, Rand D. Carstens and Tamra L. Bowman for Real Parties in Interest IPC International Corporation, John Schimanski, Jesus Hernandez, Ronnie Franco, Robert Banuelos, Sean Ferguson, Gilbert Sanchez, Clemente Saldana and Kevin Yuan.

Katten, Muchin & Zavis and Steve Cochran for Real Parties in Interest The Torrance Company, Carson-Madrona Company and Del Amo Fashion Center Merchants Association.

## OPINION

## ALDRICH, J.—

### INTRODUCTION

Petitioners,[1] African-American shoppers who claim they were beaten by security guards, sued the individual guards,[2] the guards' employer IPC International Corporation (IPC), and others, alleging various tort causes of action. Petitioners noticed the depositions of the individual guard defendants. Fearing criminal prosecution arising from the same incident, the security guards moved the trial court for a protective order precluding the depositions, or staying them until the criminal statute of limitations expires. Petitioners opposed the motion and asked the trial court by a mandamus petition to prohibit the security guards from testifying at trial to matters about which they might, during deposition, invoke their privilege against self-incrimination (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15[3]). The trial court denied both the security guards' motion and petitioners' petition. Petitioners then sought a writ of mandate in this court to direct the trial court to preclude the security guards from testifying at trial to matters about which the security guards *might* during deposition invoke their privilege.

We hold that the trial court did not abuse its discretion in denying the motions. The depositions have not commenced and the security guards have not yet sought to invoke their privilege against self-incrimination. For the

---

[1]Petitioners are: Anthony Fuller, Eddie McIntyre, Jr., Keith Moultry, Lamont Dinkins, Toney Fuller, Jr., and Roshawn Smith.

[2]The named security guard defendants are: Kevin Yuan, also known as Kevin Kitamura, John Schimanski, Jesus Hernandez, Robert Banuelos, Sean Ferguson, Gilbert Sanchez, Clemente Saldana, Ronnie Franco, and Moses Idehen (Idehen is not a party to this writ).

[3]The Fifth Amendment to the United States Constitution provides in relevant part: "No person shall . . . be compelled in any criminal case to be a witness against himself."

The California Constitution states pertinently in article I, section 15: "Persons may not . . . be compelled in a criminal cause to be a witness against themselves."

reasons set forth below, we hold the depositions should be allowed to proceed. The security guards can interpose appropriate objections so that the trial court can then rule on the validity of their invocation of the privilege with respect to specific questions. If the security guards invoke their privilege, the court will be able to fashion whatever protective order it deems reasonable to balance the interests of the parties and the judicial system. Accordingly, we deny the writ petition without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

After they were allegedly beaten by the security guards at the Del Amo Fashion Center, petitioners brought this action against the security guards, IPC, and other individuals seeking damages for, inter alia, assault, battery, malicious prosecution, false imprisonment, and discrimination.

In due course, petitioners noticed the depositions of the security guards.[4] The security guards then moved for a protective order to prevent the depositions from going forward (Code Civ. Proc., § 2025, subd. (i)(1)). The security guards described ongoing investigations by the United States Attorney's Office and the Federal Bureau of Investigation (FBI) into whether the security guards had used force under color of law during the events which gave rise to this lawsuit. (18 U.S.C. § 242.) A federal grand jury had requested the security guards' personnel files, and the FBI had interviewed and taken statements from certain IPC employees. Hence, the security guards asked the trial court, among other things, to stay the depositions entirely or until they were no longer in jeopardy of criminal prosecution.

Petitioners opposed the security guards' motion. They argued it would be unfair to permit the security guards to invoke the privilege against self-incrimination to avoid their disclosure obligations during discovery, only to then waive the privilege and testify at trial. To prevent prejudicial surprise, petitioners urged, if the trial court issued a protective order barring the security guards' depositions, that it also issue an order prohibiting the security guards from testifying at trial.

Before the court had ruled on the parties' motions, the FBI closed its case. Likewise, the Assistant United States Attorney recommended that its file be closed. (Final disposition of the federal investigation depends upon Department of Justice approval.) ■■■■ The United States Attorney's Office has indicated, however, that the investigation will be reopened if facts

---

[4]The depositions of two of the security guards' coworkers were also noticed. For simplicity, we refer to all deponents as the security guards.

warranting prosecution are developed. The United States Attorney refused to grant the security guards use or transactional immunity.[5]

After hearing, the trial court denied the security guards' request for a stay, explaining "[a]lthough staying this action until the statute of limitations expires is one consideration for the court, doing so probably serves no interest very well because of the prejudice arising to all parties from the extended delay itself." The court noted that the statute of limitations for a federal criminal prosecution is five years and will expire in this case in November 2003. The court also "declin[ed] to grant an order excluding [the security guards] from testifying at trial if they have exercised their privilege against self incrimination" during discovery.

Petitioners filed their petition for writ of mandate asking this court to direct the trial court to order, if the security guards do not testify at their depositions, that they may not testify at trial. We issued an order to show cause and temporarily stayed the proceedings in the trial court.

## DISCUSSION

### 1. *Standard of review.*

■ "Although writ review of discovery orders is not favored, it is appropriate in matters of first impression, which have importance to the courts and the profession, and in situations where general guidelines can be established for future cases. [Citation.]" (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881 [94 Cal.Rptr.2d 505].)

■ We review discovery orders under the deferential abuse-of-discretion standard. (*Avant! Corp. v. Superior Court, supra,* 79 Cal.App.4th at p. 881.) Thereunder, "a trial court's ruling 'will be sustained on review unless it falls outside the bounds of reason.' [Citation.]" (*Ibid.*)

### 2. *The legal principles.*

#### a. *The dilemma of competing interests.*

In this case we are asked to consider three competing interests: (1) that of the defendant who invokes his privilege against self-incrimination during

---

[5] "'[U]se immunity' and 'transactional immunity,' have been constitutionally sanctioned. ' "Use" immunity protects a witness only against the actual use of his compelled testimony and its fruits; "transactional immunity" protects him against later prosecution related to matters about which he testified.' [Citation.] They are thus distinguished by the nature of the prohibitions which attach to the compelled testimony." (*People v. Campbell* (1982) 137 Cal.App.3d 867, 872 [187 Cal.Rptr. 340].)

discovery in civil litigation to avoid exposure to criminal prosecution; (2) that of the civil plaintiff who seeks to complete discovery without being unduly prejudiced if the defendant who invoked the privilege during discovery later waives it and testifies at trial; and (3) that of the justice system and the court in fairly and expeditiously disposing of civil cases. (Gov. Code, § 68607; Cal. Stds. Jud. Admin., § 2.1(h).)

Code of Civil Procedure section 2017 allows discovery into "any matter, not privileged, that is relevant to the subject matter involved in the pending action." (Code Civ. Proc., § 2017, subd. (a).) Evidence Code section 940 excludes from discovery information which may tend to incriminate a party. (*Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, 688 [208 Cal.Rptr. 743].) This principle has been construed to allow assertion of the privilege against self-incrimination " 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . .' [Citations.]" (*Ibid.*) Privileged matters thus lie beyond the reach of discovery and trial courts may not compel individuals to make responses that they reasonably believe could tend to incriminate them or subject them to criminal prosecution. (*A & M Records, Inc. v. Heilman* (1977) 75 Cal.App.3d 554, 566 [142 Cal.Rptr. 390]; U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.)

However, a party is not entitled to decide for himself or herself whether the privilege against self-incrimination may be invoked. " 'Rather, this question is for the court to decide after conducting "*a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore*, whether or not the privilege is well founded." [Citation.]' [Citations.]" (*Warford v. Medeiros* (1984) 160 Cal.App.3d 1035, 1045 [207 Cal.Rptr. 94] [involving nonparty's right to invoke privilege against self-incrimination], italics added by *Medeiros*, quoting from *S. E. C. v. First Financial Group of Texas, Inc.* (5th Cir. 1981) 659 F.2d 660, 668].) This principle applies in both civil and criminal proceedings, and under both the federal and state Constitutions. (*Warford v. Medeiros, supra*, 160 Cal.App.3d at p. 1045; *Blackburn v. Superior Court* (1993) 21 Cal.App.4th 414, 428 [27 Cal.Rptr.2d 204]; *Alvarez v. Sanchez* (1984) 158 Cal.App.3d 709, 712 [204 Cal.Rptr. 864].) Only after the party claiming the privilege objects with specificity to the information sought can the court make a determination about whether the privilege may be invoked. (*Blackburn v. Superior Court, supra*, 21 Cal.App.4th 414.)[6]

Consequently, a civil defendant does not have the absolute right to invoke the privilege against self-incrimination. (*Alvarez v. Sanchez, supra*,

---

[6]Because it is not before us, we do not address the right of IPC to invoke its privilege against self-incrimination. (See *Avant! Corp. v. Superior Court, supra*, 79 Cal.App.4th at pp. 882-886.)

158 Cal.App.3d at p. 712.) A party or witness in a civil proceeding "may be required either to waive the privilege or accept the civil consequences of silence if he or she does exercise it. [Citations.]" (*Ibid.*) Courts recognize the dilemma faced by a defendant who must choose between defending the civil litigation by providing testimony that may be incriminating on the one hand, and losing the case by asserting the constitutional right and remaining silent, on the other hand. (*Avant! Corp. v. Superior Court, supra*, 79 Cal.App.4th at p. 882.)

At the same time, courts must also consider the interests of the plaintiff in civil litigation where the defendant is exposed to parallel criminal prosecution. Plaintiffs are entitled to an expeditious and fair resolution of their civil claims without being subjected to unwarranted surprise. Among the myriad purposes of the civil discovery statutes is to safeguard against surprise and gamesmanship, and to prevent delay. (*Williams v. Travelers Ins. Co.* (1975) 49 Cal.App.3d 805, 810 [123 Cal.Rptr. 83].) It would be manifestly unfair to petitioners if the security guards were to invoke their privilege against self-incrimination and later elect to waive that privilege and testify at trial about the same matters. "A litigant cannot be permitted to blow hot and cold in this manner. [Citations.]" (*A & M Records, Inc. v. Heilman, supra*, 75 Cal.App.3d at p. 566.) " ' "[T]he fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation . . . ." [Citations.]' " (*Avant! Corp. v. Superior Court, supra*, 79 Cal.App.4th at p. 882.)

Added to the mix, of course, is the interest of the courts in fairly and expeditiously disposing of civil cases, and in efficiently utilizing judicial resources. (Gov. Code, § 68607; Code Civ. Proc., § 128, subd. (a); Cal. Stds. Jud. Admin., § 2.1; *Keating v. Office of Thrift Supervision* (9th Cir. 1995) 45 F.3d 322, 324-325 [also lists, in addition to interests discussed *ante*, those of (1) people not party to the litigation and (2) the public in the pending civil and criminal cases], cert. den. (1995) 516 U.S. 827 [116 S.Ct. 94, 133 L.Ed.2d 49].) Staying civil discovery to await the outcome of a related criminal case might benefit the litigants and does not implicate constitutional issues. (*Avant! Corp. v. Superior Court, supra*, 79 Cal.App.4th at p. 882.) However, courts are guided by the strong principle that any elapsed time other than that reasonably required for pleadings and discovery "is unacceptable and should be eliminated." (Cal. Stds. Jud. Admin., § 2.) Courts must control the pace of litigation, reduce delay, and maintain a current docket so

as to enable the just, expeditious, and efficient resolution of cases. (Gov. Code, § 68607; Cal. Stds. Jud. Admin., § 2.)[7]

b. *The various procedural resolutions.*

Courts faced with a civil defendant who is exposed to a related criminal prosecution have responded with various procedural solutions designed to fairly balance the interests of the parties and the judicial system. Accommodation of the various interests, however, is usually made to a defendant in a civil action "from the standpoint of fairness, not from any constitutional right. [Citation.]" (*Blackburn v. Superior Court, supra,* 21 Cal.App.4th at p. 425.) Courts that are confronted with a civil defendant who is exposed to criminal prosecution arising from the same facts "weigh the parties' competing interests with a view toward accommodating the interests of both parties, if possible." (*Pacers, Inc. v. Superior Court, supra,* 162 Cal.App.3d at p. 690.) Courts have broad discretion in controlling the course of discovery. (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431 [79 Cal.Rptr.2d 62].) Hence, in a discovery dispute, such as this one, the trial court must exercise its discretion in assessing and balancing "the nature and substantiality of the injustices claimed" on all sides. (*Avant! Corp. v. Superior Court, supra,* at p. 882.)

Historically, courts have devised a number of procedures designed to accommodate the specific circumstances of the case. One accommodation is to stay the civil proceeding until disposition of the related criminal prosecution. (*Avant! Corp. v. Superior Court, supra,* 79 Cal.App.4th at p. 882, citing *People v. Coleman* (1975) 13 Cal.3d 867, 885 [120 Cal.Rptr. 384, 533 P.2d 1024]; *Pacers, Inc. v. Superior Court, supra,* 162 Cal.App.3d at pp. 689-690

---

[7]Government Code section 68607 provides in relevant part: "In accordance with this article and consistent with statute, judges shall have the responsibility to eliminate delay in the progress and ultimate resolution of litigation, to assume and maintain control over the pace of litigation, to actively manage the processing of litigation from commencement to disposition, and to compel attorneys and litigants to prepare and resolve all litigation without delay, from the filing of the first document invoking court jurisdiction to final disposition of the action. [¶] The judges of the program shall, consistent with the policies of this article: [¶] (a) Actively monitor, supervise and control the movement of all cases assigned to the program from the time of filing of the first document invoking court jurisdiction through final disposition. [¶] (b) Seek to meet the standards for timely disposition adopted pursuant to Section 68603. [¶] . . . [¶] (e) Adopt a trial setting policy which, to the maximum extent possible, schedules a trial date within the time standards adopted pursuant to Section 68603 and which schedules a sufficient number of cases to ensure efficient use of judicial time while minimizing resetting caused by overscheduling. . . ."

The Standards of Judicial Administration, section 2.1(h) provides "the goal of each superior court should be to manage general civil cases from filing as follows: [¶] (1) Within 12 months, dispose of 90 percent; [¶] (2) Within 18 months, dispose of 98 percent; [¶] (3) Within 24 months, dispose of 100 percent."

[directing trial court to stay civil proceeding until criminal statute of limitations runs].) Another possibility is to allow the civil defendant to invoke the privilege against self-incrimination, even if doing so may limit the defendant's ability to put on a defense. (*Avant! Corp. v. Superior Court, supra,* at p. 882, citing *People v. Coleman, supra,* at p. 886; *Keating v. Office of Thrift Supervision, supra,* 45 F.3d at p. 326 [refusal to stay proceedings not abuse of discretion].) Other accommodations have included conferring an immunity on the party invoking the privilege (see *Blackburn v. Superior Court, supra,* 21 Cal.App.4th at pp. 431-432 [discussing procedure for obtaining immunity]), or precluding a litigant who claims the constitutional privilege against self-incrimination in discovery from waiving the privilege and testifying at trial to matters upon which the privilege had been asserted. (*A & M Records, Inc. v. Heilman, supra,* 75 Cal.App.3d at p. 566 [circumscribed testimony preclusion not abuse of discretion].) Each of these procedural tools is devised based on the circumstances of the particular case. " '[T]he alleviation of tension between constitutional rights has been treated as within the province of a court's discretion in seeking to assure the sound administration of justice.' " (*Avant! Corp. v. Superior Court, supra,* at p. 882, quoting from *People v. Coleman, supra,* at p. 885.)

### 3. *Application of these principles to this case.*

█ Here, there is no dispute that the security guards function under the threat of criminal prosecution. However, depositions have not gone forward and so the trial court has not had an opportunity to ascertain whether petitioners seek information in discovery which might tend to incriminate the security guards. (*Blackburn v. Superior Court, supra,* 21 Cal.App.4th at p. 428; *Warford v. Medeiros, supra,* 160 Cal.App.3d at p. 1045.) It is clear that the security guards may not invoke a blanket privilege against self-incrimination with respect to the whole deposition. (*Blackburn v. Superior Court, supra,* at p. 431; *Warford v. Medeiros, supra,* at pp. 1044-1045.) The trial court must be given the opportunity to determine whether particular questions posed in the depositions would elicit answers that "support a conviction" or that "furnish a link in the chain of evidence needed to prosecute the witness" (*Blackburn v. Superior Court, supra,* at p. 428), and which may thus be subject to constitutional protection.

Because such exercise has not yet been undertaken here, the security guards' request for a protective order and petitioners' request for testimony preclusion were premature. Hence, we conclude the trial court exercised its discretion when it denied petitioners' request to prohibit the security guards from testifying at trial to matters that could be covered by the privilege during discovery. Under the circumstances, to preclude trial testimony

would "force[] [the security guards] to choose between their silence and a 'meaningful chance of avoiding the loss through judicial process of a substantial amount of property.' . . ." (*Pacers, Inc. v. Superior Court, supra,* 162 Cal.App.3d at p. 689, citation omitted), and would have the unacceptable effect of penalizing the security guards for exercising their constitutional privilege. (*Ibid.*) The Assistant United States Attorney's threat to reopen the criminal case should facts warranting prosecution develop, and his refusal to grant any immunity, put an additional burden on the security guards. "To allow the prosecutors to monitor the civil proceedings hoping to obtain incriminating testimony from [the security guards] through civil discovery would not only undermine the . . . privilege but would also violate concepts of fundamental fairness." (*Id.* at p. 690.) We recognize this court's authority to the contrary, urged by petitioners. (*A & M Records, Inc. v. Heilman, supra,* 75 Cal.App.3d at p. 566 [upholding limited preclusion at trial of so much of testimony covered by privilege during discovery].) Understandably, petitioners are concerned that the court's refusal to impose a bar to trial testimony, in a necessary effort to avoid any sanction against the security guards' invocation of the privilege, will enable the security guards to testify at trial about matters previously not disclosed during discovery. The court's order effectively handicaps petitioners in their efforts to prove their case, and exposes petitioners to the surprise the discovery statutes were designed to prevent. Yet, preclusion of trial testimony is only one tool available to the trial court in fashioning a fair resolution. Where the request here was premature, the trial court did not abuse its discretion in refusing to grant petitioners' request to apply that tool.

Likewise, the trial court did not abuse its discretion refusing to stay the civil proceedings until the criminal statute of limitations expires, as the security guards had requested. The parties do not dispute that the criminal statute of limitation does not expire until November 2003, three years from the scheduled trial date of October 2000, and a few months before expiration of the five-year period for bringing a civil action to trial in California. (Code Civ. Proc., § 583.310.) A delay of three years not only flies in the face of the policies behind Government Code section 68607 and the Standards of Judicial Administration, but also exposes both sides of the litigation to the risk of diminished memory and lost records. While a stay is a possible solution here (*Pacers, Inc. v. Superior Court, supra,* 162 Cal.App.3d at pp. 689-690), the court's decision was not an abuse of discretion.

The depositions should proceed. If the security guards choose to invoke their right against self-incrimination with respect to particular questions, then they should do so at that time. This will provide the trial court with a clear record upon which to base a ruling about whether the constitutional

privilege is implicated. Once that determination has been made, the trial court will be in a better position to exercise its discretion and fashion a procedural ruling that can accommodate the various interests of the parties and of the judicial system.

On remand, the trial court in the first instance in exercising its discretion to fashion discovery orders (*Obregon v. Superior Court, supra,* 67 Cal.App.4th at p. 431) may employ any one of the above described accommodations to balance the competing interests presented here. The court should consider granting the security guards an immunity against the use of their deposition answers, or evidence derived from those answers, in any criminal prosecution of them. Alternatively, the court could fashion an order requiring the security guards, if they choose to testify at trial to matters covered by the previously invoked privilege, to immediately notify the court and petitioners of their waiver. The deadline for waiving the privilege could be set as late as, for instance, 10 days before trial. Or the court could impose an irrevocable deadline, for example four weeks before trial, beyond which the security guards could not waive the privilege absent a showing of exigent circumstances. Upon notice of the security guards' waiver, the court could stay the proceedings for the purpose of allowing petitioners to depose the waiving security guards about topics covered by their exercise of the privilege during discovery. Petitioners should also be permitted to conduct any ancillary discovery which develops during the further depositions. Another option for the court would be to consider inviting the parties to stipulate to the scope of deposition questions impinging on the privilege. Each of these accommodation options has the salutary effect of not penalizing the security guards for availing themselves of their constitutional rights, protecting petitioners from unfair surprise, while accommodating everyone's need for a fair and expeditious trial. The trial court may choose to adopt one or more of our suggestions or devise a solution that fairly accommodates the interests of all parties and the judicial system in light of circumstances which then exist.

### 4. *Conclusion.*

The court did not abuse its discretion in denying petitioners' request for trial-testimony preclusion and by declining to stay the proceedings. Any discovery order with respect to the security guards' privilege against self-incrimination is premature. Until the depositions go forward and the security guards object to specific questions, the court has no basis on which to ascertain, with particularity, whether the information petitioners seek would support a conviction or lead to prosecution of the security guards. However, in the interests of fundamental fairness, once the privilege is properly and actually invoked, the court should consider fashioning an order which

accommodates all of the competing interests and which allows petitioners to re-depose the security guards about matters not previously testified to, should the security guards opt to waive their privilege at trial.

### DISPOSITION

The writ is denied without prejudice. The alternative writ issued September 28, 2000, is discharged. The stay of September 28, 2000, is hereby vacated. Each party to bear its own costs.

Klein, P. J., and Croskey, J., concurred.