Filed 9/16/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ALPHA MEDIA RESORT INVESTMENT CASES. | A150451, A150452<br><br>(CJJP No. CJC-12-004728;<br>City & County of San Francisco<br>Super. Ct. Nos. CGC-08-477832,<br>CGC-10-495852) |

This is an appeal from judgment in two coordinated actions[1] in which defendant Derek F. C. Elliott challenges the trial court's rulings to deny his motion to dismiss for want of prosecution within the five-year statutory period and, alternatively, for a stay of proceedings pending resolution of his parallel criminal case. Elliott contends each of the challenged rulings was an abuse of discretion and asks that we remand to the trial court with instructions to vacate the judgments against him and to dismiss or, alternatively, enter the stay as requested. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Elliott has been named as a defendant in six civil fraud actions, five of which were filed in the Superior Court of the City and County of San Francisco (including the two at hand).[2] These six actions involve the same basic allegations. Approximately 25

---

[1] *Spalding v. Maxim Bungalows Cofresi* (Super. Ct. S.F. City and County, 2016, No. CGC-08-477832, filed July 23, 2008) (*Spalding*) and *Celovsky v. Catledge* (Super. Ct. S.F. City and County, 2016, No. CGC-10-495852, filed Jan. 7, 2010) (*Celovsky*).

[2] There are six coordinated cases in total. In addition to the two cases currently before this court, the four other coordinated actions are as follows: (1) *Aleo v. Elliott* (Super. Ct. L.A. County, No. BC461442) (*Aleo*); (2) *Alvarez v. Catledge* (Super. Ct. S.F. City and County, No. CGC-09-491529) (*Alvarez*); (3) *The John Christopher Bunting*

1

defendants, including Elliott, his father Frederick Elliott, and numerous Elliott-affiliated corporate entities (hereinafter, Elliott entities), pursued an international investment scheme through which they fraudulently induced hundreds of individuals and organizations to invest in two resort properties in the Dominican Republic. One of these resorts, the Sun Village Juan Dolio resort, was not renovated as promised despite defendants' collection of over $91 million in investor funds. The second resort—the Cofresi resort—was operational, yet, as one plaintiff alleged, the Elliotts had no intention of making the new investors "fee simple" owners as promised. Ultimately, this fraud scheme generated a net loss of about $170 million.

Based upon these allegations, nearly 230 claims in total were brought against the 25 or so defendants, including fraud, conspiracy to defraud, deceit and unjust enrichment claims. General, special and punitive damages were sought, as well as various forms of equitable relief. Applications for approval of complex designation and single assignment were subsequently granted for the five actions filed in the Superior Court of the City and County of San Francisco, including these two matters.

In June 2012, one of the other named defendants, Alpha Media Publishing, Inc. (fka Dennis Publishing, Inc.), filed a petition for coordination of actions. On November 29, 2012, San Francisco Judge Richard A. Kramer was designated the coordination trial judge and authorized "to exercise all the powers over each coordinated action of a judge of the court in which that action is pending." Judge Kramer thereafter ordered that all six actions would be coordinated for purposes of discovery but would remain separate for trial absent agreement by the parties.

Meanwhile, criminal charges for mail fraud and conspiracy were brought against Elliott and codefendant James Catledge in the United States District Court for the Northern District of California based essentially on the same facts alleged in our proceedings. Elliott subsequently reached a plea deal in his criminal case in which he

---

*Foundation v. Catledge* (Super. Ct. S.F. City and County, No. CGC-09-491463); and (4) *Avalos v. Catledge* (Super. Ct. S.F. City and County, No. CGC-10-496169).

admitted engaging in a conspiracy to commit mail fraud and agreed to the truth of numerous facts relating to his intentional efforts to defraud investors in the Sun Village Juan Dolio resort project. In addition, Elliott agreed, among other things, to forfeit his right to claim Fourth and Fifth Amendment protections and to cooperate with the government in codefendant Catledge's criminal trial in exchange for leniency. The parties represented in their appellate briefing that these parallel criminal proceedings involving Elliott and Catledge were ongoing.

On February 3, 2014, based on a joint stipulation between plaintiff and defendants Alpha Media Group, Inc. and Alpha Media Publishing, Inc., the trial court ordered that the five-year statutory period to bring an action to trial set forth in Code of Civil Procedure section 583.310 would run no earlier than June 2, 2014, in the *Spalding* matter.[3] No such stipulation or order was reached with respect to the Elliotts because, despite being served with the summons and complaint, they had not answered at the time this order was entered.[4]

Discovery subsequently yielded a wealth of documentary evidence of wrongdoing from various defendants, and plaintiffs were able to successfully reach multimillion-dollar settlements with two primary defendant groups (identified herein as the James Catledge/Impact, Inc. defendant group and the Dennis Publishing, Inc./Maxim defendant group). However, while most parties in the coordinated proceedings were focusing on settlement and judicial efficiency strategies during regular case management conferences with the trial court, Elliott, his father and the Elliott entities were for the most part absent. In fact, it was not until May 4, 2015, that Elliott filed an answer in the *Spalding* and *Celovsky* matters.

---

[3] The trial court lost jurisdiction over the *Spalding* matter for a 17-month period in 2009 and 2010 while one of the parties appealed an order denying arbitration. In addition, pursuant to an earlier stipulation and order entered in July 2013, the five-year statutory period in *Spalding* had already been extended to run " 'no earlier than February 17, 2014 . . . .' "

[4] Elliott, a resident of Canada, was personally served in Miami, Florida, in the *Spalding* matter in September 2009 and in the *Celovsky* matter on or before May 3, 2010.

In January 2016, the trial court set the *Spalding* and *Celovsky* matters for trial. The day after the trial court issued pretrial scheduling orders on March 28, 2016, the Elliott defendants (including Elliott) began filing substitution of counsel forms. In doing so, Elliott associated in to represent himself in a pro se capacity. Elliott's deposition was noticed for April 7, 2016, but he failed to appear. Plaintiffs therefore requested that the *Spalding* trial date be reset from June 20, 2016, to September 6, 2016, which was the date scheduled for the *Celovsky* trial, and proposed a bench trial rather than a jury trial should the Elliotts fail to appear. The court agreed to these requests and set a pretrial conference for July 8, 2016.[5] Meanwhile, plaintiffs reached settlements with all named defendants but the Elliotts, the Elliott entities, and one other defendant in the *Aleo* action.

On August 10, 2016, about four weeks before trial was set to begin in the *Spalding* matter, Elliott and his father first raised the issue of dismissal under Code of Civil Procedure section 583.310. The *Spalding* trial date was thus continued to September 26, 2016, and the Elliotts' motion for dismissal or, in the alternative, a stay of proceedings was heard on September 6, 2016. Following the contested hearing, the court denied the motion in its entirety on September 16, 2016.

A bench trial began in the *Spalding* matter shortly thereafter, with no appearance from the Elliotts. At its conclusion, the trial court found in favor of the plaintiff and against the Elliotts, jointly and severally, on the following causes of action: fraud (concealment), fraud (false representation and concealment) and civil conspiracy. In addition, the court found they acted with malice, oppression and fraud such that punitive damages were warranted. Accordingly, the court awarded the *Spalding* plaintiff $984,575 in damages for the fraud causes of action, $1,476,862.50 in punitive damages, and $564,957 in prejudgment interest.

A bench trial in the *Celovsky* matter followed on November 7, 2016, again with no appearance from the Elliotts. At its conclusion, the trial court found the Elliotts jointly

---

[5] By this time, San Francisco Judge Mary E. Wiss was presiding over the coordinated proceedings.

4

and severally liable for fraud (concealment) and fraud (fraud and conspiracy to defraud based upon concealment and misrepresentation).  The court also found they acted with malice, oppression and fraud such that punitive damages were again warranted.  Accordingly, the court awarded to plaintiffs Samuel Celovsky and John R. Young, cotrustees of The John and Dorothy Johnson Missionary Foundation, a total of $7,715,518.41 in damages, punitive damages, and prejudgment interest; to plaintiff Samuel Celovsky a total of $511,192.65 in damages, punitive damages, and prejudgment interest; to plaintiff Debra Celovsky a total of $104,480.25 in damages, punitive damages, and prejudgment interest; and to plaintiff John R. Young a total of $254,063.73 in damages, punitive damages, and prejudgment interest.

This timely appeal of the judgments followed.[6]

## DISCUSSION

Elliott challenges on appeal the trial court's order denying his motion to dismiss under Code of Civil Procedure section 583.310 et seq.[7] for want of prosecution, and, alternatively, for a stay pending resolution of his related criminal case in order to protect his Fifth Amendment rights.  We address each contention in turn below.

## I.      Motion to Dismiss for Failure to Bring the Action to Trial Within Five Years.

Under section 583.310, an action must "be brought to trial within five years after the action is commenced against the defendant."  (See § 583.110, subd. (a) [" 'Action' includes an action commenced by cross-complaint or other pleading that asserts a cause of action or claim for relief"].)  If not, "dismissal of the action is 'mandatory and . . . not subject to extension, excuse, or exception except as expressly provided by statute.' (§ 583.360, subd. (b).)"  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717,

---

[6] Elliott's father has not joined in this appeal.

[7] Unless otherwise stated, all statutory citations herein are to the Code of Civil Procedure.

721 (*Bruns*).)  Here, the trial court relied on the "impracticability" exception to the five-year rule set forth in section 583.340, subdivision (c).[8]

Defendant contends the trial court's decision was an abuse of discretion.  In particular, he challenges the court's key finding that it was impractical for plaintiffs to bring these actions to trial within the statutory five-year period.

We begin by taking a closer look at the law.  "Sections 583.310 and 583.360 subserve the purpose of 'encourag[ing] the expeditious disposition of litigation.' [Citation.]  The aim of the statutes is not to have trials, but to bring cases to a conclusion, to secure for plaintiffs the relief, and to defendants, the repose, to which the law entitles them, and to free the court's resources for the efficient adjudication of other claims.  The statutes focus upon the detriment to the judicial system, as well as to a defendant, that results from 'tardy litigation of a claim.'  [Citation.]"  (*Hughes v. Kimble* (1992) 5 Cal.App.4th 59, 69–70.)

"Under 583.340(c), the trial court must determine what is impossible, impracticable, or futile 'in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.]  The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' [Citations.]  A plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing exceptions of impossibility, impracticability, or futility.  [Citation.]  ' "[E]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation." [Citation.]'  [Citation.]  'Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of

_____

[8] Section 583.340 provides:  "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile."

6

pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions.' [Citation.] Determining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' [Citation.] ' "[I]mpracticability and futility" involve a determination of " 'excessive and unreasonable difficulty or expense,' " in light of all the circumstances of the particular case.' [Citation.]" (Bruns, supra, 51 Cal.4th at pp. 730–731.)

"The plaintiff bears the burden of proving that the circumstances warrant application of the section 583.340(c) exception. [Citation.] . . . The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the [appellant] has proved that the trial court abused its discretion." (Bruns, supra, 51 Cal.4th at p. 731.)

Here, the trial court relied upon the following facts when finding it impractical under section 583.340, subdivision (c) for plaintiffs to bring this action to trial before the five-year deadline. First, the court noted: "These coordinated cases involve the claims of nearly 230 plaintiffs against approximately 25 defendants for an alleged fraud scheme with an estimated loss, according to plaintiffs, of $170,000,000. The Elliotts are just two of the named defendants." In fact, the court noted, the prior trial judge, Judge Kramer, determined when coordinating these actions that each one qualified as complex under California Rules of Court, rule 3.400.

Moreover, the parties had several times discussed the impending five-year deadline under section 583.310 and, with respect to some of the defendants, had secured orders or entered into stipulations to prevent dismissal. However, these strategies did not work with the Elliott defendants because, despite being personally served with the summons and complaint, the Elliotts did not answer the complaint or otherwise appear in the Spalding, Celovsky and Alvarez matters until May 4, 2015, after which their attorney of record immediately withdrew from representation.

In addition, the trial court referenced in the order its loss of jurisdiction in the *Spalding* matter for 17 months (from August 12, 2009, to January 20, 2011) while another defendant appealed an order denying arbitration.

And lastly, the trial court found that, with respect to all six coordinated cases, plaintiffs had diligently and consistently pursued resolution, participating in "regular Case Management Conferences in which the Court and the parties discussed settlement, strategies for reducing discovery and trial costs, and joint or separate trials." Moreover, plaintiffs' persistent effort had for the most part paid off. As the court concluded: "[Plaintiffs'] efforts have resulted in settlements with most defendants; the claims against the Elliotts are among the few that remain. Based on the record, the Court is satisfied that bringing these actions to trial within five years of their commencement would have been impracticable, and plaintiffs have exercised reasonable diligence in prosecuting their cases."

Elliott does not challenge the veracity of these individual facts cited by the trial court in its order. Rather, he argues that, notwithstanding these facts, the record establishes plaintiffs failed to use reasonable diligence in prosecuting these actions for one reason: plaintiffs could have obtained, but did not obtain, a default judgment against him within the five-year period.

Even assuming Elliott is correct that this fact weighs against plaintiffs in the reasonable diligence inquiry, the law is clear that applicability of the section 583.340, subdivision (c) exception "is generally fact specific, depending on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles." (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 438; accord, *Bruns*, *supra*, 51 Cal.4th at p. 731 [impracticability is determined in light of all relevant circumstances in the particular case tending to show " ' " '*excessive* and *unreasonable* difficulty or expense' " ' "].) For this reason, "[t]he question of impossibility, impracticability, or futility is best resolved by the trial court, which 'is in the most advantageous position to evaluate these diverse factual matters in the first instance.' [Citation.]" (*Bruns*, *supra*, at p. 731.) And, based on the record set

8

forth above, we find no reason to override the trial court's reasoned judgment that plaintiffs met their burden to prove impracticability in this case. Notwithstanding plaintiffs' failure to secure a default judgment, there were indeed extenuating circumstances that justified their delay in getting these cases ready for trial in a timely manner, including, as the trial court noted, the undisputed complexity of the cases and the Elliotts' apparent reluctancy to engage themselves in any of the other parties' resolution efforts.[9]

In so concluding, we recognize the principle that each individual defendant, including Elliott, " 'is entitled to have his right to dismissal determined as to himself alone.' [Citations.]" (*Brunzell Constr. Co. v. Wagner*, *supra*, 2 Cal.3d at p. 555.) And in complex, multiparty proceedings such as the coordinated proceedings presently before us,

_____

[9] As noted in Elliot's authority, *Hughes v. Kimble*, *supra*, 5 Cal.App.4th 59, "former section 581a, subdivision (c) provided that a separate ground for mandatory dismissal existed if more than three years passed from the service of summons, and a default judgment was not obtained. (16 West's Ann. Code Civ. Proc. (1976 ed.) § 581a, subd. (c).) See also 6 Witkin, Cal. Procedure [(3d ed. 1985)] Proceedings Without Trial, § 87.) Section 581a was repealed in 1984. (Stats. 1984, ch. 1705, § 3, p. 6176.) The provisions of subdivisions (a) and (b) of the repealed statute were reenacted in sections 583.210 through 583.250. Subdivision (c) was not continued. Respecting subdivision (c), the Assembly Legislative Committee commented as follows: 'Subdivision (c) is not continued. The provision was not well understood, was unduly inflexible, and was subject to numerous implied exceptions in the case law. *Whether a default must be entered or judgment taken within a particular time is a matter for judicial determination pursuant to inherent authority. . . .*' (Legis. Committee Com., 16 West's Ann. Code Civ. Proc., § 581a (1992 pocket supp.), p. 19.) The foregoing explanation is consistent with our conclusion that the trial court should determine on the basis of particular facts and circumstances of a case whether the plaintiff's time to bring the case to trial should run during all, or some, or none of any time in which the defendant is in default." (*Id.* at p. 70, fn. 6, italics added.) We agree with our appellate colleagues' analysis on this point, as we find it most consistent with the California Supreme Court's longstanding instruction, referenced in other authority above, that "the applicability of the [impracticability] exception must be judged 'in light of *all* the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves.' (Italics added.) [Citations.]" (*Brunzell Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 553.)

9

" '[i]mpracticability' may vary not only as to different proceedings but as to different parties within the same proceeding. Each individual is entitled to have his [former] section 583 [now section 583.310] claim evaluated with respect to his own particular role in the litigation.' " (*Ibid.*) As our state's highest court made clear in a case like ours involving multiple defendant groups with divergent procedural and substantive objectives, the impracticability exception ultimately "involves a judgment of practical realities, and artificial distinctions between participating litigants should be avoided." (*Ibid.*) It is the trial court, however, that is "in the most advantageous position to evaluate these diverse factual matters," and, here, as we have concluded, the trial court appropriately did so. (Cf. *Brunzell Constr. Co. v. Wagner*, *supra*, at pp. 548, 555–556 [reversing orders dismissing the action against certain defendants where the trial court relied on the sole fact that the causes of action against the instant defendants were legally severable from the causes of action involving the other defendants, and did not consider (as it should have) "whether, pragmatically, it was 'impracticable and futile' for plaintiff to proceed to trial against the instant defendants during the five-year period succeeding the filing of the complaint"].)

Lastly, the trial court found it unnecessary to consider other possible statutory grounds for excusing plaintiffs from the five-year deadline in light of its finding of impracticability under section 583.340, subdivision (c). We reach the same conclusion. Accordingly, we affirm the court's ruling without addressing the parties' alternative arguments. (See *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 802 ["On appeal, '[w]e do not review the trial court's reasoning, but rather its ruling.' [Citation.] Thus, we may affirm the trial court's ruling 'on any basis presented by the record' "].)

## II.     Motion to Stay Pending Resolution of Parallel Criminal Proceedings.

Elliott next challenges the trial court's refusal to stay these actions pending resolution of his federal criminal case in order to protect his Fifth Amendment privilege against self-incrimination. He acknowledges the trial court's decision to deny his motion to stay is reviewed for abuse of discretion and not subject to reversal unless it falls outside the bounds of reason. (See *Avant! Corp. v. Superior Court* (2000) 79

10

Cal.App.4th 876, 881–882 (*Avant!*) [affirming the denial of an order to stay discovery pending the outcome of a related criminal case while noting that, under the deferential standard of review, "[w]e could . . . disagree with the trial court's conclusion, but if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court"].)

Several California courts have acknowledged under similar circumstances the wisdom of a Ninth Circuit case, *Keating v. Office of Thrift Supervision* (9th Cir. 1995) 45 F.3d 322 (*Keating*). There, the court explained: "The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. [Citations.] 'In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence.' [Citation.] 'Nevertheless, a court may decide in its discretion to stay civil proceedings . . . "when the interests of justice seem[] to require such action." ' [Citation.]" (*Id.* at p. 324; accord, *Avant!*, *supra*, 79 Cal.App.4th at pp. 885–886; *Fuller v. Superior Court* (2001) 87 Cal.App.4th 299, 305–306 (*Fuller*).)

Noting the decision whether to stay civil proceedings pending the outcome of a parallel criminal case should be made in light of the particular circumstances and interests at hand, the *Keating* court adopted the following test: "[T]he decisionmaker should consider 'the extent to which the defendant's fifth amendment rights are implicated.' [Citation.] In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." (*Keating*, *supra*, 45 F.3d at pp. 324–325; see also *Avant!*, *supra*, 79 Cal.App.4th at p. 882 [" ' "The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side" ' "].)

11

The record reflects the trial court in this case acknowledged and carefully weighed the specific interests asserted by each side before denying Elliott's stay request, just as the law set forth above requires. In particular, the trial court found the interests of both plaintiffs and the court weighed against a stay in this case: "The first complaint in this consolidated action was filed over eight years ago, and the cases are approaching final resolution. The *Spalding* and *Celovsky* actions are presently set for trial [on dates fewer than two months away]. A stay would further delay resolution of these cases until at least some period of time *after* January 2018, a period of more than one year. Even assuming the trial of James Catledge proceeds in January 2018, the possibility of an appeal may further delay resolution of this case."

The trial court's concerns about delaying these proceedings for at least one more year were well founded: " '[C]onvenience of the courts is best served when motions to stay proceedings are discouraged.' " (*Avant!*, *supra*, 79 Cal.App.4th at p. 888.) Indeed, California courts are "guided by the strong principle that any elapsed time other than that reasonably required for pleadings and discovery 'is unacceptable and should be eliminated.' (Cal. Stds. Jud. Admin., § 2.) [To that end, c]ourts must control the pace of litigation, reduce delay, and maintain a current docket so as to enable the just, expeditious, and efficient resolution of cases. (Gov. Code, § 68607; Cal. Stds. Jud. Admin., § 2.)" (*Fuller*, *supra*, 87 Cal.App.4th at pp. 306–307; accord, *Avant!*, *supra*, at p. 887 [delay " 'would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party' "].)

In addition, the trial court noted the fact that Elliott's guilty plea in the parallel criminal case involving the same basic allegations in our cases "diminishes to a certain degree the likelihood that any testimony he might offer might further incriminate him. . . . If during discovery or at trial the Elliotts are presented with one or more questions that might implicate their Fifth Amendment privileges, they are free to make an objection, which this Court will rule on accordingly."

12

The trial court's reasoning was again proper. As plaintiffs note, when Elliott and the government executed the plea deal, both parties were aware of these civil matters. And one of the negotiated terms of the plea deal was the government's promise "not to file any additional charges against [Elliott] that could be filed as a result of the investigation that led to the captioned Indictment" so long as he complied with the deal's other terms. We agree with the trial court these circumstances helped to minimize any burden on Elliott from allowing these civil matters to go forward.

Moreover, "a party is not entitled to decide for himself or herself whether the privilege against self-incrimination may be invoked. ' "Rather, this question is for the court to decide after conducting '*a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore*, whether or not the privilege is well founded.' [Citation.]" [Citations.]' [Citation.] This principle applies in both civil and criminal proceedings, and under both the federal and state Constitutions. [Citations.] Only after the party claiming the privilege objects with specificity to the information sought can the court make a determination about whether the privilege may be invoked." (*Fuller*, *supra*, 87 Cal.App.4th at p. 305; see also *People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 952 ["Although there were concerns that the criminal defendants might seek to obtain information unavailable through criminal discovery by means of civil discovery . . . none of these issues had yet manifested and the trial court could resolve them with appropriate orders if and when they arose"].) Based on these principles, the trial court properly found the better course of action was for Elliott's civil trials to go forward, with the understanding that he could object on Fifth Amendment grounds to any particular question or line of questioning, at which time the court would issue a ruling.

According to Elliott, the trial court's refusal to grant him a stay ended up costing him "large sums of money in damages and pre-judgment interest," as he was "prevented . . . from offering testimony at the civil trial in [his] defense." Of course, any loss he sustained under these judgments is irrelevant to our analysis given that it occurred after the challenged ruling and, thus, was not part of the trial court's reasoning. Moreover, it

was Elliott's decision not to appear for trial in *Spalding* or *Celovsky*. As the trial court indicated in its written order, Elliott could have elected instead to testify in his own defense and to object to any particular question implicating his Fifth Amendment right. The trial court could then have ruled on his objection appropriately. However, " ' "the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. . . ." [Citation.]' " (*Avant!*, *supra*, 79 Cal.App.4th at p. 882.) Here, the trial court found after balancing the appropriate factors that a stay of these proceedings would *not* best serve justice in the aggregate.[10] We find no grounds to overturn the court's decision.

## DISPOSITION

The judgments are affirmed. Costs on appeal are awarded to respondents.

---

[10] Elliott faults the trial court for relying "heavily" on *Fuller*, *supra*, 87 Cal.App.4th 299, because "*Fuller* and cases with similar holdings are strongly distinguishable . . . ." According to Elliott, the proper standard is instead the five-factor *Keating* test set forth above. (*Ante*, p. 10.) However, whatever factual differences *Fuller* may have, the reviewing court there cites the five-factor *Keating* test and discusses three of the factors at length (to wit, the interests of both sides of the litigation and the court), which is exactly what the trial court did in this matter. (See *Fuller*, s*upra*, at pp. 306–307, 308–310.) To the extent Elliott is faulting the trial court for focusing on only three *Keating* factors in its written order, he directs us to no case, nor are we aware of one, that *requires* a trial court to explicitly address all five factors. Rather, the relevant case law uniformly holds that, when deciding whether to grant or deny a stay, the court, in its sound discretion, " ' "must assess and balance the nature and substantiality of the injustices claimed on either side." ' " (*Avant!*, *supra*, 79 Cal.App.4th at p. 882.) The trial court here did exactly that.

14

_____
Wick, J.<sup>*</sup>


WE CONCUR:


_____
Siggins, P. J.


_____
Fujisaki, J.


A150451 & A150452/*In re Alpha Media Resort Investment Cases*

_____

<sup>*</sup> Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15

<u>A150451 & A150452/In re Alpha Media Resort Investment Cases</u>

Trial Court: Superior Court of City and County of San Francisco

Trial Judge: Mary E. Wiss, J.

Counsel:  Law Offices of Todd B. Rhoads and Todd B. Rhoads for Defendant and Appellant Derek F. C. Elliott.

     Vereschagin Law Firm and Bryan W. Vereschagin for Plaintiffs and Respondents.