[No. A015612. First Dist., Div. Two. Oct. 15, 1984.]

J. ALBERT WARFORD et al., Plaintiffs and Appellants, v.
MANUEL WAYNE MEDEIROS et al., Defendants and Respondents;
SONNY ARNOLD et al., Real Parties in Interest and Respondents.

1036

COUNSEL

Robert M. McLeod, Douglas W. Sullivan, Thelen, Marrin, Johnson & Bridges and Folger & Levin for Plaintiffs and Appellants.

No appearance for Defendants and Respondents and for Real Parties in Interest and Respondents.

OPINION

KLINE, P. J.—This case raises questions concerning the conditions under which discovery may be compelled from unwilling nonparty witnesses who invoke the Fifth Amendment privilege against self-incrimination.

On June 3, 1981, plaintiffs J. Albert Warford and Joanne Stevens filed an application for an order to show cause why Manuel Wayne Medeiros, Bernice Sanga Medeiros and John Edward Medeiros (hereinafter nonparty deponents) should not be required to provide deposition testimony and certain documents. (See Code Civ. Proc., § 2034.) Plaintiffs' application was supported by an affidavit of John Rapp, their attorney in an action pending in the State of Hawaii. The affidavit stated that plaintiffs had filed a civil action in the State of Hawaii against seven named defendants and ten Does. Plaintiffs assertedly alleged in that action that the named defendants, together with the unnamed Does, had been involved in a conspiracy which led to the murders of Paul Warford and David Blue, sons of the plaintiffs, as well as a conspiracy to inflict harm on plaintiff J. Albert Warford. By their action in Hawaii plaintiffs sought to recover damages sustained as a result of the conspiracies and to impose a constructive trust upon those moneys that were acquired by the defendants as a result of their wrongful acts.

On January 7, 1981, the Hawaii Circuit Court issued a commission to take depositions of certain individuals in the State of California, including respondent nonparty deponents. Thereafter, the nonparty deponents were each individually served with a subpoena duces tecum requiring them to attend their respective depositions and produce specified documents.

On or about February 8, 1981, each of the nonparty deponents appeared for deposition in San Francisco accompanied by their attorney, Brian H. Getz. Attorney Getz instructed his clients to state his or her name and age, but to refuse to answer any other questions propounded. Counsel further

instructed his clients not to produce the documents specified in the various subpoenas duces tecum.

On June 3, 1981, the San Francisco Superior Court issued an order to show cause why an order should not be made compelling each of the nonparty deponents to answer questions and produce the specified documents. █ The nonparty deponents filed their opposition, claiming, inter alia, that they were in imminent danger of being investigated as alleged participants in a conspiracy under criminal investigation in Hawaii, and asserting their Fifth Amendment right not to testify against themselves.[1] The only evidence to support this claim was a declaration by Attorney Getz that he had conferred with the nonparty deponents prior to their depositions and had become familiar with the underlying aspects of the testimony they were requested to give; that said testimony, and all of it, could be construed to incriminate the deponents; and that for this reason he had instructed the deponents not to answer any questions other than to provide their names and ages and not to produce the documents sought.

On October 2, 1981, a minute order was filed in the San Francisco Superior Court action denying plaintiffs' application, with the exception that the nonparty deponents were ordered to answer questions pertaining to their names, ages, addresses and places of work. In addition, plaintiffs' request for an *in camera* hearing on the self-incrimination objection was denied.

On appeal plaintiffs contend that the trial court's order should be reversed and that the lower court should be required to 1) engage in a particularized inquiry into the validity and scope of the assertions of the Fifth Amendment privilege against self-incrimination; 2) conduct an *in camera* hearing in aid of that particularized inquiry; 3) strike the assertions of the privilege against self-incrimination with respect to each question propounded and each document requested for which the nonparty witnesses fail to properly justify their assertions of the privilege; and 4) state for the record the particular bases upon which the trial court might subsequently sustain any assertions of the privilege against self-incrimination with respect to any particular questions propounded or any particular documents requested.

*Appealability*

█ The first threshold issue we must address is whether the trial court's order denying the major portion of plaintiffs' application is final and ap-

---

[1]The claim was also made that the nonparty deponents were in danger of being served as Doe defendants in the underlying civil action. However, the self-incrimination privilege is not applicable to matters that will subject a witness to liability in a civil proceeding. (*Metalworking Machinery, Inc.* v. *Superior Court* (1977) 69 Cal.App.3d 791, 794 [138 Cal.Rptr. 369].)

pealable. Plaintiffs instituted the present proceedings in California pursuant to Code of Civil Code Procedure sections 2023 and 2034.[2]

■ As a general rule no order in a civil action is appealable unless it is embraced within the list of appealable orders prescribed by statute. (§ 904; *Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709 [39 Cal.Rptr. 891, 394 P.2d 707].) Thus, a party normally may not appeal from a discovery order. (*Southern Pacific Co.* v. *Oppenheimer* (1960) 54 Cal.2d 784, 786 [8

---

[2]Code of Civil Procedure section 2023 provides: "Whenever any mandate, writ or commission is issued out of any court of record in any other state, territory, district or foreign jurisdiction, or whenever, upon notice or agreement, it is required to take the testimony of a witness or witnesses in this State, witnesses may be compelled to appear and testify in the same manner and by the same process and proceedings as may be employed for the purpose of taking testimony in proceedings pending in this State.

"A subpoena re deposition or a subpoena duces tecum re deposition directed to any such witness shall be issued by the clerk of the superior court if it appears by affidavit filed:

"(1) That the witness resides within 150 miles from the court issuing such subpoena and from the place at which his attendance is required;

"(2) That the testimony of such witness or the documents described in any such subpoena duces tecum are relevant to the subject matter involved in the action or proceeding; and

"(3) That under the law of the state, territory, district or foreign jurisdiction in which the action or proceeding is pending, the deposition of a witness taken under such circumstances may be used in such action or proceeding."

Code of Civil Procedure section 2034 provides in pertinent part: "If a party or other deponent refuses or fails to answer any question propounded upon examination during the taking of a deposition, or refuses or fails to produce at a deposition any books, documents or other things under his control pursuant to a subpoena duces tecum, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. The proponent, on notice to all persons affected thereby may move the court in which the action is pending (if the deponent is a party or otherwise subject to the jurisdiction of such court), or if the court does not have jurisdiction over the deponent, to the superior court of the county in which the deposition is taken for an order compelling an answer or if good cause is shown, the production of the book, document, or other thing. The motion may also be made, without further notice, if the proponent notifies the refusing party or other deponent at the time of the refusal or failure that the proponent will apply to the court for an order pursuant to this subdivision of this section, at a specified time not less than 10 nor more than 30 days from the date of such refusal or failure, in which event the officer before whom the deposition is taken shall direct the refusing or failing party or other deponent to attend a session of said court at said time. Not less than five days prior to the hearing on any such motion, the proponent must lodge with the court the original transcript of the deposition. Upon the refusal or failure of a party to answer any interrogatory submitted under Section 2030, the proponent of the question may on like notice make like application for such an order. Upon the finding and service of either written objections to a request under Section 2033, or an answer deemed by the requesting party not to be in compliance with the requirements of Section 2033, the party serving the request may on like notice make like application for an order requiring answers or further answers to the request. If the motion is granted the court shall order that an answer or further answer be served within an appropriate time. Upon the refusal or failure of a party to identify documents, papers, books, accounts, letters, photographs, objects, or tangible things or to permit inspection or entry after having been served with a request under Section 2031, the party serving the request may on like notice and upon a showing of good cause make application for an order to compel compliance with the request."

All references to code sections will refer to the Code of Civil Procedure unless otherwise indicated.

Cal.Rptr. 657, 356 P.2d 441]; *Bartschi* v. *Chico Community Memorial Hospital* (1982) 137 Cal.App.3d 502, 507 [187 Cal.Rptr. 61].) The rationale for this rule is that in the great majority of cases the delay due to interim review is likely to result in harm to the judicial process by reason of protracted delay (*Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]) and discovery orders may be reviewed on appeal from a final judgment on the merits. (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 777, fn. 1 [149 Cal.Rptr. 499]; *Wooldridge* v. *Mounts* (1962) 199 Cal.App.2d 620, 628 [18 Cal.Rptr. 806].) ■ However, we think an exception to the general rule exists where, as here, no final review of the underlying action will take place in a California forum.

In *Adams* v. *Woods* (1861) 18 Cal. 30, our Supreme Court held that a discovery order by a California court relating to production of documents for use in an action pending in New York was final and appealable. More recently, some federal appellate courts have held that all discovery orders are appealable when the discovery order is the only matter before the federal district court. (See, e.g., *Brown* v. *Braddick* (5th Cir. 1979) 595 F.2d 961, 964-965 and cases cited therein.) The Second Circuit, however, has limited the right to appeal to only those cases where the discovery order is the sole matter before the district court and where, as in this case, the lower court denies discovery of a nonparty. (*Shattuck* v. *Hoegl* (2d Cir. 1975) 523 F.2d 509, after further proceedings, 555 F.2d 1118, 1120.)

In the instant action, the superior court's denial of plaintiffs' request for discovery was a final judgment, at least within this jurisdiction. Accordingly, we find an appeal lies from the superior court's order.

*Lack of Respondent's Brief*

■ The remaining threshold issue concerns the proper standard of review when, as in the present case, no respondent's brief has been filed on appeal. Rule 14 of the California Rules of Court provides that every respondent shall file a brief, and where no respondent brief is filed rule 17(b) applies.[3] "Courts have differed in the application of this rule with some taking a strict view and holding that the failure to file a brief was in effect a consent to a reversal [citation], or an abandonment of any attempt to support the judgment. [Citation.] Since the burden is always on the appellant to show error, other courts have taken the position that the failure to file a brief does not require an automatic reversal. [Citations.] The better rule and

---

[3]California Rules of Court rule 17(b) states in pertinent part: "If the brief is not filed . . . the court may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on the appellant's opening brief."

the one which we follow is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found. [Citations.]'' (*Votaw Precision Tool Co.* v. *Air Canada* (1976) 60 Cal.App.3d 52, 55 [131 Cal.Rptr. 335]; see also *In re Marriage of Schultz* (1980) 105 Cal.App.3d 846, 853 [164 Cal.Rptr. 653].) It is on the basis of what we too perceive to be the better rule that we now proceed to address the central issue in this case.

*Assertion of Privilege*

Although both the United States and California Constitutions speak of the right not to be compelled to testify against oneself in a criminal trial (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15), such right has been greatly expanded by judicial decision.　■　In *Kastigar* v. *United States* (1972) 406 U.S. 441 [32 L.Ed.2d 212, 92 S.Ct. 1653], the United States Supreme Court declared that the privilege against self-incrimination ''can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . .'' (*Id.,* at p. 444 [32 L.Ed.2d at p. 217].) Thus, the privilege extends to a person appearing only as a witness in any kind of proceeding where testimony can be compelled. (*Gonzales* v. *Superior Court* (1980) 117 Cal.App.3d 57, 62 [178 Cal.Rptr. 358].)

This being the law, it is clear that nonparty deponents may assert their privilege not to incriminate themselves through the taking of deposition or the production of documents in a civil context such as that before us.[4] (See, e.g., *Zonver* v. *Superior Court* (1969) 270 Cal.App.2d 613 [76 Cal.Rptr. 10]; *De Vita* v. *Sills* (3d Cir. 1970) 422 F.2d 1172, 1178.) The issues presented to us here relate to the nature of the substantive showing that must be made to enable the trial court to sustain an assertion of the privilege and the nature of the proceedings at which this must be done.[5]

---

[4]For discussion of an asserted distinction between the need for the privilege in civil as opposed to criminal proceedings see Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases* (1982) 91 Yale L.J. 1062, 1082-1087.

[5]It bears noting these issues are in certain important respects distinguishable from those that may be presented in cases in which the person resisting civil discovery on the basis of the Fifth Amendment privilege is a party to the litigation in which the discovery is sought. For a discussion of the case law pertinent to that situation see Note (1981) 27 Villanova L.Rev. 198 and Note, *Penalizing the Civil Litigant who Invokes the Privilege Against Self-Incrimination* (1972) 24 U.Fla. L.Rev. 541. (See also *Alvarez* v. *Sanchez* (1984) 158 Cal.App.3d 709 [204 Cal.Rptr. 864].) Nor is the present case one in which judicially created immunities are claimed to be available to protect interests that can otherwise only be accommodated by upholding the privilege. (See Buck, *Self-Incrimination in Civil Litigation: The Evolution of California's Judicially Created Immunities from Murphy v. Waterfront Commission* (1982) 9 Hastings Const.L.Q. 351 and Note, *Immunity Grants for Discovery in Private Civil Litigation* (1978) 66 Cal.L.Rev. 233.)

Section 940 of the Evidence Code provides that "[t]o the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." ■ However, since the privilege protects against real dangers, not remote and speculative possibilities (*Zicarelli* v. *New Jersey Investigation Comm'n* (1972) 406 U.S. 472, 478 [32 L.Ed.2d 234, 240, 92 S.Ct. 1670]), a witness must satisfy the court that the claim of privilege is justified and not a mere subterfuge. (*United States* v. *Mandujano* (1976) 425 U.S. 564, 575 [48 L.Ed.2d 212, 221, 96 S.Ct. 1768]; *Hoffman* v. *United States* (1951) 341 U.S. 479, 486 [95 L.Ed. 1118, 1124, 71 S.Ct. 814].) Thus, section 404 of the Evidence Code states that "[w]henever the proffered evidence is claimed to be privileged under Section 940, the person claiming the privilege has the burden of showing that the proffered evidence might tend to incriminate him; and the proffered evidence is inadmissible unless it clearly appears to the court that the proffered evidence cannot possibly have a tendency to incriminate the person claiming the privilege."

The seminal case dealing with the assertion of Fifth Amendment rights is *Hoffman* v. *United States, supra,* 341 U.S. 479. In *Hoffman,* the high court stated as follows: "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. [Citation.] But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. [Citation.] The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, [Citation], and to require him to answer if 'it clearly appears to the court that he is mistaken.' [Citation.] However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' [Citation.]" (*Id.,* at pp. 486-487 [95 L.Ed. at p. 1124].)

Following *Hoffman* our Supreme Court held that "[a]n ordinary witness need not actually prove the existence of an incriminatory hazard as that

would surrender the very protection which the privilege against self-incrimination was designed to guarantee. Instead, the privilege forbids compelled disclosures which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense; in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question cannot possibly have a tendency to incriminate the witness." (*Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673]; see also *Goldsmith* v. *Superior Court* (1984) 152 Cal.App.3d 76, 81 [199 Cal.Rptr. 366] as mod. 154 Cal.App.3d 143a.) And the majority of federal circuit courts have found that a witness need not demonstrate a real "likelihood of prosecution" in order to invoke the privilege against self-incrimination; rather, when a witness can show any possibility of prosecution which is more than fanciful, he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster. (See, e.g., *In re Folding Carton Antitrust Litigation* (7th Cir. 1979) 609 F.2d 867, 871; *In re Brogna* (1st Cir. 1978) 589 F.2d 24, 27 [53 A.L.R. Fed. 369]; *In re Master Key Litigation* (9th Cir. 1974) 507 F.2d 292, 293; *United States* v. *Goodman* (4th Cir. 1961) 289 F.2d 256, 259, vacated on other grounds, 368 U.S. 14 [7 L.Ed.2d 75, 82 S.Ct. 127]; *United States* v. *Miranti* (2d Cir. 1957) 253 F.2d 135, 139.) ■ The California and federal case law, which is not at all inconsistent, essentially stands for the proposition that, in situations such as that before us, assertion of the privilege in a civil proceeding cannot be sustained—that is, the court must conclude that an answer to the challenged question or production of a withheld document cannot possibly have a tendency to incriminate the person invoking the privilege—*unless* the person who invokes the privilege demonstrates that his or her fear of incrimination is reasonable and not advanced fancifully or merely imagined.[6]

■ Federal cases also establish that "[t]here is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings"[7] (*Capitol Products Corporation* v. *Hernon* (8th Cir. 1972) 457 F.2d 541, 542)

---

[6]This rule is, we recognize, different from that adopted in some other jurisdictions. Thus, for example, the Supreme Court of Missouri has declared that once a witness claims the privilege available under that state's constitutional counterpart to the Fifth Amendment, "*a rebuttable presumption arises that the witness' answer might tend to incriminate him,* a presumption that can be rebutted by a demonstration *by the party seeking the answer* that such answer ' "cannot possibly" have such tendency to incriminate.' [Citation.]" (*State* ex rel. *Shapiro Realty & Inv.* v. *Cloyd* (Mo. 1981) 615 S.W.2d 41, 46, second italics added.)

[7]The only exception to this rule is the situation in which the trial court finds that the person claiming the privilege could " 'legitimately refuse to answer all relevant questions,' *United States* v. *Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975), because of the threat of incrimination from any relevant questioning . . . ." (*S. E. C.* v. *First Financial Group of Texas, Inc.* (5th Cir. 1981) 659 F.2d 660, 668-669.) In the absence of such a finding, a person cannot be totally excused from responding to relevant inquiries and may invoke the privilege only with respect to genuinely threatening questions. (*Id.*)

and that "[t]he privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim." (*Heligman* v. *United States* (8th Cir. 1969) 407 F.2d 448, 450-451; accord *S. E. C.* v. *First Financial Group of Texas, Inc.* (5th Cir. 1981) 659 F.2d 660, 668-669; *Hudson Tire Mart, Inc.* v. *Aetna Casualty & Sur. Co.* (2d Cir. 1975) 518 F.2d 671, 674.) This has long been the rule in California with respect to both criminal and civil proceedings. (See *Ex parte Stice* (1886) 70 Cal. 51, 53 [11 P. 459]; *People* v. *Johnson* (1974) 39 Cal.App.3d 749, 758 [114 Cal.Rptr. 545]; *In re Leavitt* (1959) 174 Cal.App.2d 535, 537-538 [345 P.2d 75]; *Cohen* v. *Superior Court* (1959) 173 Cal.App.2d 61, 68 [343 P.2d 286].)

The reason for the requirement that the person claiming the privilege must object with specificity to the information sought from him is that only where this is done is the trial court enabled to make the particularized inquiry required of it. "A party is not entitled to decide for himself whether he is protected by the fifth amendment privilege. Rather, this question is for the court to decide after conducting '*a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded.*' *United States* v. *Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir. 1976)." (*S. E. C.* v. *First Financial Group of Texas, Inc., supra,* 659 F.2d at p. 668, italics added; see also *United States* v. *Zappola* (2d Cir. 1981) 646 F.2d 48, 53.)

For the reasons set forth in the federal case law, we hold that a blanket refusal to testify is unacceptable; a person claiming the Fifth Amendment privilege must do so with specific reference to particular questions asked or other evidence sought. We hold, additionally, that once this is done, the trial court must undertake a particularized inquiry with respect to each specific claim of privilege to determine whether the claimant has sustained his burden of establishing that the testimony or other evidence sought might tend to incriminate him.[8]

■ In the present case certain questions were asked at the deposition of the nonparty deponents which, in our view, are so innocuous that it is

---

[8]The substance and scope of the particularized inquiry will, of course, vary with the circumstances peculiar to the cases in which it must be made. Although for this reason it is impossible to devise an exhaustive list of the matters that should be within the scope of the inquiry or upon which the inquiry should turn, those that will often be pertinent include: 1) the nature of the information sought to be disclosed, 2) implications derived from the question asked, 3) the nature and verifiability of any investigation or proceeding claimed to justify the fear of incrimination, or the possibility that any such investigation or proceeding may be commenced, 4) matters disclosed by counsel in argument on the claim of privilege, and 5) evidence previously admitted. (See 2 Jefferson, Cal. Evidence Benchbook (2d Ed. 1982) § 44.3, p. 1619.) The person claiming the privilege may not, however, be required to introduce any particular supporting evidence. (*Ibid.*)

difficult to conceive that a response could be incriminating.[9] Yet the trial court failed to inquire how an answer to any of these questions might tend to incriminate the nonparty deponents. From the record before us it appears that although there was a hearing on the order to show cause, the trial judge never questioned the nonparty deponents themselves. The only evidence upon which the trial judge could have relied was the bald assertion of counsel that any testimony from his clients, and all of it, could be construed by reasonable minds to be incriminating. Such a blanket refusal to testify is, as we have explained, unacceptable. Accordingly, the cause must be remanded for further proceedings to properly determine whether the privilege exists and may validly be asserted by each deponent with respect to particular questions and specified documents.

 Questions remain concerning the nature of the proceedings in which the trial court must determine whether the assertion of the privilege against self-incrimination is valid. Citing *United States* v. *Goodwin* (5th Cir. 1980) 625 F.2d 693, *United States* v. *Melchor Moreno* (5th Cir. 1976) 536 F.2d 1042 and *Pacific Lighting Leasing Co.* v. *Superior Court* (1976) 60 Cal.App.3d 552 [131 Cal.Rptr. 559], plaintiffs argue that an *in camera* hearing should be conducted to evaluate the assertion of the Fifth Amendment privilege.

In *Goodwin,* two potential defense witnesses in an entrapment case asserted their Fifth Amendment privilege against self-incrimination. Counsel for one witness outlined several possible bases for criminal liability that could arise from his client's testimony. However, "these suggestions were made more as hypothetical offerings rather than real possibilities."[10] Counsel for the second witness specified that his client feared liability arising out of matters either directly or indirectly related to the case. The reviewing court held that the procedure followed at trial was not adequate:

"Better results can be obtained if a trial judge conducts a hearing with the witness in his chambers out of the jury's presence. In such a hearing the witness need not reveal the details of his possible liability. But he must describe in general terms the basis of the liability actually feared. He must give a description that is at least adequate to allow the trial judge to determine whether the fear of incrimination is reasonable and, if reasonable, how far the valid privilege extends. This is to allow the trial judge to make

---

[9]For example, upon questioning, Manuel Medeiros refused to disclose the names of his parents, whether he had any uncles, his telephone number, whether he had ever been to Hawaii, and whether he was related to Isaac Sanga.

[10]As previously mentioned, this deficiency alone does not invalidate an assertion of the privilege, since the witness need only show any possibility of prosecution which is more than fanciful.

a decision regarding the witness' obligation to answer each question as asked. A record can be made that is separate from the record kept of the proceedings in the courtroom. This record could be sealed and opened only for appellate review, if necessary. Such an *in camera* hearing in this case could have informed both the trial judge and this Court." (625 F.2d at p. 702.) A similar procedure was followed and approved in *United States v. Fricke* (5th Cir. 1982) 684 F.2d 1126, 1130-1132.

In *Melchor Moreno,* the court neither approved nor disapproved of the utilization of an *in camera* procedure. Rather, the court pointed out the controversy concerning *in camera* hearings: "On the other hand, the Third Circuit has expressed fears that *in camera* proceedings could violate the witness's Fifth Amendment rights. (*In re U.S. Hoffman Can Corp.,* 373 F.2d 622 (CA3, 1967).) The appellants in *U.S. Hoffman Can Corp.* had resisted, on Fifth Amendment grounds, disclosure of financial information. The District Court ordered them to submit a sealed statement explaining the basis for their claim. The Court of Appeals held that in circumstances where the appellants proved that a direct answer might be incriminating, the judge could make no further inquiry. A procedure involving sealed statements, the court said, 'is bound ultimately to beget a requirement of maximum disclosure to prove the right to the privilege, in contrast to a proceeding in open court where the disclosure may be [interrupted] at the point where the right to the privilege becomes clear to the judge. In any event, the history of the privilege itself contains its own condemnation of a procedure in camera.' [Citation.]" (536 F.2d at p. 1047.)

In *Pacific Lighting, supra,* 60 Cal.App.3d 552, the court found that the trial court in a criminal proceeding acted properly in ordering a leasing company to produce records for inspection by the court, so that the court, in the exercise of its discretion, could determine if disclosure of the records to other than the court *in camera* would aid in the defense and would not violate the company's right to be free from unreasonable searches and seizures. However, *Pacific Lighting* is inapposite to the issue before us, since it deals with a Fourth Amendment not Fifth Amendment privilege. As has been pointed out, an *in camera* hearing cannot ordinarily be used to compel a witness to disclose assertedly incriminating evidence withheld under the Fifth Amendment without first granting the sort of immunity that may later burden criminal prosecution. "To that extent, the trial court cannot assess the value of the witness' testimony [*in camera*] before overriding the state's interest in allowing the witness to remain silent, as it can with other privileges, [such as those asserted under the Fourth Amendment]." (Western, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases* (1978) 91 Harv.L. Rev. 567, 581, fn. 38.)

We see no reason to mandate that hearings to determine the right to a Fifth Amendment privilege invariably be held *in camera* rather than in open court. As this course will be more appropriate in some cases than it will in others, we think it wiser to leave room for trial court discretion.

However, we think there are valid reasons for requiring, as we do, that the trial court clearly state for the record the basis for its conclusion whether the claim of privilege (or, stated differently, the fear of incrimination) is reasonably asserted and valid with respect to each question propounded or document sought to be discovered that is in issue. (See *Capitol Products Corporation* v. *Hernon, supra,* 457 F.2d at p. 544.)

The order is reversed and remanded for further proceedings consistent with this opinion.

Rouse, J., and Smith, J., concurred.