Filed 3/20/25  Razuki v. Malan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SALAM RAZUKI, | D082560 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00034229-CU-BC-CTL) |
| NINUS MALAN et al., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed in part; reversed in part; remanded with directions.

Law Offices of John W. Zryd and John W. Zryd for Plaintiff and Appellant.

Demergian Law and David K. Demergian for Defendant and Respondent.

Salam Razuki appeals an order awarding Ninus Malan $200,000 in monetary sanctions for Razuki's conduct in conspiring to kidnap Malan several months after this lawsuit was filed.  Razuki argues that the trial court erred because: (1) criminal conduct is not sanctionable under Code of

Civil Procedure[1] section 128.5; (2) there was insufficient admissible and relevant evidence to prove he acted in bad faith; (3) the motion for sanctions was not timely served; (4) the motion failed to adequately state the amount of sanctions requested and how they were calculated; and (5) awarding sanctions while Razuki's appeal in his criminal case was pending undermined his Fifth Amendment privilege against self-incrimination.  In a supplemental letter brief filed at our request, Razuki further contends that Malan did not demonstrate the $200,000 awarded by the trial court was "incurred as a direct result" of Razuki's sanctionable conduct, as required for a sanctions award payable to the opposing party under section 128.5, subdivision (f)(2).

We reject all of Razuki's contentions but the last one.  Although the trial court committed no error in finding that Razuki engaged in sanctionable bad faith conduct, the court abused its discretion by awarding sanctions of $200,000 payable to Malan in the absence of any showing that these fees were "incurred as a direct result" of Razuki's sanctionable conduct.  (§ 128.5, subd. (f)(2).)  We therefore affirm the finding of sanctionable conduct but reverse the $200,000 award to Malan and remand the matter to allow the court to exercise its discretion whether to impose sanctions as a penalty payable to the court and/or receive additional evidence that would otherwise support a sanctions award payable to Malan under section 128.5, subdivision (f)(2).

FACTUAL AND PROCEDURAL BACKGROUND

A. *Civil and Criminal Proceedings*

In July 2018, Razuki sued Malan and several entities over disputed business dealings and property investments.  Razuki alleged that he was entitled to damages and injunctive relief because Malan misappropriated and

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

2

mishandled assets in connection with their marijuana businesses. Other entities intervened as plaintiffs or filed separate lawsuits in connection with the business assets. Malan and several defendants also filed cross-complaints against Razuki, his family members, and various entities connected to him.

According to a federal criminal complaint and probable cause statement in *United States v. Razuki, et al.,* Case No. 3:18-mj-05915-MDD, in November 2018, Razuki, Sylvia Gonzales, and Elizabeth Juarez conspired to kidnap and murder Malan in Mexico. The complaint alleged that as part of that conspiracy, Razuki and Gonzales paid a confidential informant to kill Malan because of Razuki's frustration with the civil litigation. The probable cause statement described how Gonzales paid the informant a deposit and told the informant how he could spot Malan after a court hearing.

Malan attested in a declaration that on November 14, 2018, he and his girlfriend awoke to several federal agents ringing his doorbell to tell him his life was in danger. For 90 minutes, the agents created a staged murder scene in Malan's home by gagging him, duct-taping him to a chair, tearing his clothes, and applying makeup to make it look like he had been beaten. Then, at the agents' direction, Malan and his girlfriend had to surrender their electronic devices and refrain from contacting any friends and family while they were sequestered in a hotel room with armed security personnel stationed outside.

According to the probable cause statement, late the next day on November 15, 2018, the confidential informant had a recorded meeting with Razuki and told him that he "took care of it," and that it was "done." The informant offered to show Razuki "proof," but Razuki said he did not want to see it.

Razuki was arrested the next day on November 16, 2018. Federal prosecutors charged him with conspiring to kidnap Malan for the purpose of intimidation and murder (18 U.S.C. § 1201, subd. (c) (count 2)) and conspiring to commit an act that would constitute the offense of murder, kidnapping, or maiming, in Mexico (18 U.S.C. § 956 (count 1)).

*B. Malan's First Motion for Sanctions*

Shortly after Razuki's arrest, Malan moved for approximately $31,000 in costs, fees, and expenses as sanctions in the civil case under section 128.5, subdivision (a). Malan's attorney, Daniel Watts, submitted a declaration in support of the motion stating that because of Malan's protective custody and Razuki's arrest, he and co-counsel had to research how to handle the unusual circumstances, spend time requesting a restraining order, and prepare for a hearing that had to be continued. Watts included a list of the hours he and others billed, along with hourly rates to support the request for attorney fees. Malan also submitted a declaration summarizing some of the allegations in the criminal complaint and stating that he had incurred expenses from being in protective custody and attending the restraining order hearing. Malan requested that the court take judicial notice of, among other things, the complaint and probable cause statement in the criminal case.

The court denied Malan's motion without prejudice, finding that much of Malan's evidence was related to the petition for a restraining order that was ultimately vacated. It also found that some of the fees Malan was seeking in a separate civil case against Razuki appeared to overlap with the fees he was requesting in his sanctions motion. The court further noted that according to the criminal complaint, Razuki denied being involved in any conspiracy to kidnap and kill Malan. The court therefore concluded that Malan's motion for sanctions was premature.

4

*C. Razuki's Guilty Plea to Conspiracy to Kidnap Malan*

In November 2022, Razuki pled guilty to conspiring to kidnap Malan (count 2), and in February 2023, he was sentenced to seven years in federal custody. Notwithstanding his guilty plea, Malan appealed his conviction to the Ninth Circuit Court of Appeals.[2]

*D. Malan's Second Motion for Sanctions*

Malan filed a second motion for sanctions in April 2023, submitting his own revised declaration and another declaration from his new attorney, David Demergian. Malan's revised declaration included detailed information from the criminal complaint, the probable cause statement, and the prosecution's sentencing memorandum in the criminal case. His declaration referenced the roughly $31,000 expended at the time of his original motion, and then stated that "[s]ince that time my attorney's fees and expenses which have been occasioned by RAZUKI's tactics have well-exceeded $200,000." He also attested that "in the context of punitive damages," he suffers from "extreme emotional distress and post-traumatic stress disorder" and "medical and domestic issues from the anxiety associated" with Razuki's plot.

Demergian, who was present at the hearing when Razuki pled guilty, stated in his declaration that Razuki admitted under penalty of perjury that between September and November 2018, he, Gonzales, and Juarez agreed to solicit someone to kidnap Malan and transport him to Mexico to either intimidate or kill him. Razuki further admitted that in furtherance of that agreement, he met with an individual to arrange the kidnapping and gave the person $1,000 as partial payment for the kidnapping and transport.

---

[2] On our own motion, we take judicial notice of the Ninth Circuit's docket in Razuki's appeal, which shows that Razuki voluntarily dismissed the Ninth Circuit appeal while this appeal was pending. (*United States v. Salam Razuki*, No. 23-352, D.C. No. 3:18-cr-05260-CAB-1, Dkt. No. 260.)

Demergian attested that he had represented Malan "through dozens of Court proceedings, read thousands of pages of documents, and briefed two appeals taken by Razuki-controlled entities/persons relative to the Court's disqualification of [cross-defendants' counsel]." He stated that his "own fees occasioned by Mr. Razuki's clearly frivolous appeals . . . approach $100,000."

Razuki opposed the motion, arguing that because he had appealed his criminal conviction, the Fifth Amendment prevented him from submitting a declaration that would "expand on . . . or inform the court more thoroughly" about his guilty plea admissions and respond to the allegations against him. He further argued, among other things, that the motion was untimely and failed to state a requested amount, that there was insufficient admissible evidence to support sanctions under section 128.5, and that Malan failed to present an accounting of his costs and attorney fees. Razuki's attorney, John Zryd, submitted a short declaration addressing the trial court's appointment of a receiver and the separate restraining order proceedings.

Razuki filed objections to Malan's declaration asserting that any statements from the criminal complaint, probable cause statement, and sentencing memorandum were inadmissible hearsay. He objected to Malan's statements about his protective custody on similar grounds. As for Demergian's declaration, Razuki asserted that any statements related to his guilty plea were irrelevant and constituted hearsay.

At the motion hearing, Demergian clarified that Malan was only requesting section 128.5 sanctions, not any "punitive damages." When asked by the court where the money for sanctions would "come from," Demergian suggested that the court use "a couple hundred thousand dollars in [Demergian's] trust account from the sale of the estate" as a "nice source of money." The court and Demergian also discussed "another pot of money"

6

amounting to about $700,000 which was somehow related to Watts and other entities' counsel. Later in the hearing, Demergian told the court that Malan "has always said 4.3 million dollars" was an appropriate sanction because that was the amount at stake in the litigation. He then said that one percent of that amount—which he erroneously said was $430,000 rather than $43,000—was also "reasonable," and that Malan had proven "over $300,000 in attorney's fees." Demergian mentioned the idea of giving the court time sheets "so [they could] talk about each .2 entry for a telephone call with Malan and what it was about," but he dismissed the idea as "ridiculous" and cited *Kravitz v. Superior Court* (2001) 91 Cal.App.4th 1015 (*Kravitz*) for the proposition that the sanctions award did not have to be "related at all" to the actual fees. Demergian ended his argument by asserting that the "$200,000 sitting in trust . . . seems like a perfect, perfect sanction amount" to award as a partial reimbursement of attorney fees.

### E. Trial Court's Ruling

The court granted Malan's motion for sanctions and awarded him $200,000 in "reasonable litigation expenses" for Razuki's "bad faith actions and tactics that were frivolous." The court started by granting Malan's request for judicial notice of the court's prior ruling on his first motion for sanctions, and of documents in Razuki's criminal case. It also granted Razuki's request for judicial notice of his notice of appeal in the federal criminal case[3] and the complaint in Malan's civil suit against Razuki arising from the criminal case.

The court then overruled Razuki's objections to Malan's and Demergian's declarations, finding that any hearsay statements in the

---

[3]     The record only includes a blank page where the notice of appeal should be.

7

criminal complaint, probable cause statement, and Malan declaration were admissible for the non-hearsay purpose of showing the effect on the listener. The court held that Razuki's "egregious" attempt to have Malan murdered constituted an action or tactic made in bad faith under section 128.5, that the attempted kidnapping and subsequent criminal cause unreasonably and unnecessarily delayed the civil litigation, and that a motion for sanctions was no longer premature because the criminal proceedings had ended. The court further found that while Razuki was entitled to his Fifth Amendment rights during his pending appeal, "nothing prevented a simple declaration contesting the evidence presented" by Malan in support of the motion.

DISCUSSION

I

We disagree with Razuki's first contention that criminal conduct is not sanctionable under section 128.5. Our task when interpreting a statute is "to give language used in a statute its ordinary meaning, and if the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . . To that end, we generally must accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose," and avoid a construction that would make some words surplusage. (*People v. Valencia* (2017) 3 Cal.5th 347, 357 [cleaned up].)

We conclude that the plain language of the statute does not preclude sanctions for conduct just because it may also be criminal. Section 128.5, subdivision (a), provides that a trial court may order a party to pay reasonable expenses "incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." Section 128.5, subdivision (b)(1), states that " '[a]ctions

8

or tactics' include, *but are not limited to*, the making or opposing of motions or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading." (Italics added.) Subdivision (b)(2) of that section defines "frivolous" to mean "totally and completely without merit *or for the sole purpose of harassing an opposing party*." (Italics added.)

Courts have interpreted "bad faith" in the context of section 128.5 to mean " ' "without subjective good faith or honest belief in the propriety or reasonableness of such actions." ' " (*In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 135; see *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1072 [bad faith "means simply that the action or tactic is being pursued for an improper motive"]; see also *Campbell v. Cal-Gard Sur. Servs.* (1998) 62 Cal.App.4th 563, 574 ["[a]n evil motive is not required; subjective bad faith may be inferred"]; *Llamas v. Diaz* (1990) 218 Cal.App.3d 1043, 1047, fn. 9 [a finding of frivolousness may sometimes equate with a finding of subjective bad faith].) We conclude that criminal conduct can logically fall under the umbrella of sanctionable bad faith conduct if it is done with an improper motive of harassing an opposing party. There is nothing in the language of section 128.5 that categorically exempts criminal behavior from serving as grounds for sanctions. In fact, it would be illogical if acts done in extreme bad faith—such as forming a conspiracy to kidnap and murder or intimidate a party opponent—were not sanctionable merely due to their criminal nature.

Razuki makes no argument as to why his alleged misconduct, if sufficiently supported by the evidence, was not "frivolous" as defined by section 128.5. Rather, he argues that because section 128.5 sanctions are more commonly imposed for acts like improper motions and filings, the Legislature must have intended to limit the statute's purview to those or

9

closely similar categories. We are not persuaded. In describing the kinds of bad faith actions or tactics that are punishable by sanctions, the statutory phrase "including, but are not limited to" in the definition is indicative of enlargement, not restriction. (*Wainwright v. Superior Court* (2000) 84 Cal.App.4th 262, 267, citing *Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389.) And while unnecessary and harassing filings may constitute one form of sanctionable conduct, we decline to adopt Razuki's interpretation and construe section 128.5 so narrowly as to make the phrase "but are not limited to" into surplusage.

Our conclusion is also supported by the fact that section 128.5, subdivision (e), expressly excludes "disclosures and discovery requests, responses, objections, and motions" from categories of behavior that are sanctionable under the statute. If the Legislature intended to exclude criminal behavior from section 128.5's application, it could have done so. "A cardinal rule of statutory construction is that it is not a judicial function to read into statutes language the Legislature might have used or might have intended. In other words, courts do not rewrite statutes." (*Shiheiber v. JPMorgan Chase Bank, N.A.* (2022) 81 Cal.App.5th 688, 702 [cleaned up].) We find no basis for reading an exclusion of criminal acts into section 128.5.

Lastly, sanctioning misconduct that could also constitute criminal behavior does not require the court to "make criminal findings" or allow a party "to bring quasi-criminal charges" as Razuki contends. Section 128.5 does not independently authorize criminal charges, nor does it bestow the trial court with authority to find a party to civil litigation criminally liable. Rather, section 128.5 merely "broaden[s] the powers of trial courts to manage their calendars and provide[s] for expeditious processing of civil actions[.]" (Stats. 1981, ch. 762, § 2, p. 2968; see *County of Imperial v. Farmer* (1988)

10

205 Cal.App.3d 479, 485.)  Accordingly, we reject Razuki's argument that criminal conduct is not sanctionable under section 128.5.

## II

Razuki next argues that there was insufficient admissible evidence to support the court's finding that he acted in subjective bad faith because the criminal case documents were inadmissible hearsay and Malan's declaration statements were "irrelevant, insufficient, hearsay, and/or otherwise objectionable."[4]  We disagree.

A trial court's evidentiary rulings are reviewed for abuse of discretion. (*People v. Flores* (2020) 9 Cal.5th 371, 409.)  A ruling on a request for sanctions under section 128.5 is also reviewed for abuse of discretion. (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1345.)  "To the extent the trial court's decision to issue sanctions depends on factual determinations, we review the record for substantial evidence to support those determinations.  Thus, our review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination" of the trial court.  (*Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 192 (*Howell*) [cleaned up].)

Razuki is correct that the criminal complaint, probable cause statement, and sentencing memorandum contained or constituted hearsay

---

4    In the trial court, Razuki submitted 41 pages of unnumbered evidentiary objections.  On appeal, he does not specify which of these specific objections he is claiming the trial court erroneously overruled.

evidence.[5] (Evid. Code, § 1200.) But Razuki ignores the fact that the trial court admitted this evidence for the non-hearsay purpose of showing its effect on the listener. On appeal, Razuki does not mention this fact or make any effort to explain why the trial court erred by admitting the evidence for this non-hearsay purpose. He has therefore forfeited any objection to the trial court's consideration of the evidence for this limited purpose. We are not bound to develop an appellant's argument for him. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).) Absent any contrary indication in the record, we must presume the trial court considered this evidence solely for the non-hearsay purpose for which it was admitted, not for the truth of the matter asserted.

Even disregarding the hearsay contained in the criminal complaint, probable cause statement, and sentencing memorandum, there was still sufficient admissible evidence in Malan's and Demergian's declarations to support the court's finding that Razuki acted in bad faith under section 128.5. To start, the court did not abuse its discretion by overruling Razuki's objections to the portions of Malan's declaration describing his experience in protective custody and how the criminal proceedings affected him physically and mentally. Specifically, Malan's declaration stated that on November 14, 2018, he and his girlfriend "awoke to a ringing doorbell and 7 FBI agents" who gagged him, duct-taped him to a chair, tore his clothes, and made it "look like [he] had been beaten bloody." Malan attested that the agents staged a photoshoot to create false proof of a violent crime scene, then sequestered him

---

[5] The criminal complaint was admissible under the official records exception to the hearsay rule (Evid. Code, § 1280) and it was relevant to give context to Razuki's guilty plea by showing what crime he was charged with committing. The factual allegations of the criminal complaint were not admissible for the truth of the matter asserted, except to the extent Razuki admitted them as part of his guilty plea.

in a hotel room where he was not allowed to contact friends or family. According to other statements in Malan's declaration, he "suffered, and continue[s] to suffer, from extreme emotional distress" and fears for his own and his loved ones' safety "every single day." He further stated that "[n]ightmares and insomnia are common," and he suffers from "medical and domestic issues from the anxiety associated" with Razuki's acts.

Malan asserts that he had personal knowledge of these matters, and Razuki makes no argument as to why those statements would constitute inadmissible hearsay or lack foundation. We consider waived mere conclusory assertions, like Razuki's, without reasoned arguments to support them. (*Cahill, supra*, 194 Cal.App.4th at p. 956.) We must indulge all "intendments and presumptions" to support the court's order "on matters to which the record is silent, and error must be affirmatively shown." (*Ellis v. Roshei Corp.* (1983) 143 Cal.App.3d 642, 645, fn. 2; see also *Friends of South Fork Gualala v. Department of Forestry & Fire Protection* (2024) 106 Cal.App.5th 1180, 1202 [" '[w]e review the result the trial court reached, not its legal reasoning, and we may affirm on any ground supported by the record, unconstrained by the route the trial court took in getting there[]' "].) Razuki has shown no error as to these portions of Malan's declaration.

The court also did not abuse its discretion in overruling objections to the portions of Demergian's declaration describing Razuki's plea hearing admissions. Demergian attested that he was present at the hearing in November 2022, and that Razuki admitted to the elements and factual basis of conspiring to kidnap Malan. Although such statements are hearsay, the trial court correctly found that Razuki's guilty plea fell under the hearsay exception for statements against penal interest. (Evid. Code, § 1230; see *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th

13

931, 946, fn. 10 ["Detailed explanations of one's own criminal misconduct in a formal legal proceeding would surely seem to satisfy the exception[]" to the hearsay rule for declarations against penal interest.].)

When considering these admissible statements from Malan's and Demergian's declarations together, we conclude that they are sufficient to support the trial court's finding of bad faith conduct "for the sole purpose of harassing (e.g., kidnapping and intimidating) an opposing party." The bulk of Razuki's arguments regarding the sufficiency of evidence have to do with admissibility. The only substantive argument he makes about the sufficiency of the evidence appears to be that there was not enough evidence to show a relationship between his bad faith acts and the civil case. We disagree. Even without considering the criminal charging documents and sentencing memorandum, the timing and context of the misconduct supports the court's finding that Razuki's acts were meant to delay the civil proceedings and harass Malan for his role in them. Razuki sued Malan in July 2018 after their business relationship had already soured. In his opening brief, Razuki cites a report in the record confirming that he had invested approximately $3.7 million in the marijuana operations at issue in the civil litigation. Although no permanent restraining order was entered against Razuki, his attorney acknowledged that Malan sought one against him in August 2018. These facts reflect the highly contentious nature of the litigation, even at its outset.

According to Malan's unrefuted admissible statements, federal agents took him into protective custody in November 2018—just a few months after the litigation started—and Razuki was arrested shortly thereafter. Razuki admitted, under penalty of perjury, to conspiring to kidnap Malan between September and November 2018. Malan's own description of his experience in

14

protective custody, and the effects the ordeal had on his mental and physical health, support a finding that he experienced Razuki's conduct as harassment even though the kidnapping conspiracy was aborted by law enforcement.  The totality of the evidence was sufficient to support the trial court's finding that Razuki engaged in bad faith actions or tactics for the sole purpose of harassing an opposing party.  (§ 128.5, subds. (a), (b)(1), (b)(2).)  Even if a different trial court could reach the opposite conclusion and decide that Razuki's bad faith acts were somehow unconnected to the civil dispute, " 'we are not authorized to substitute our judgment for that of the trial judge; the trial court's exercise of discretion will not be disturbed in the absence of a clear showing of abuse.' " (*Jensen v. Superior Court* (2021) 64 Cal.App.5th 1003, 1012.)  We conclude that the trial court's factual determinations were supported by substantial evidence.

### III

Razuki argues that Malan's motion for sanctions was procedurally defective because his notice was untimely.  The motion was noticed for a hearing date of April 14, 2023, which meant the motion (if served electronically) was due by March 20, 2023.  (See §§ 1005, subd. (b) & 1010.6, subd. (a)(3)(B).)  Malan does not dispute that he served his notice of motion one day late.  Absent any showing of prejudice to Razuki, however, we find no error in the trial court's discretionary decision to hear the motion on the merits.

Section 1005 by its terms gives a trial court discretion to shorten the notice periods prescribed by the statute.  (§ 1005, subd. (b) ["The court, or a judge thereof, may prescribe a shorter time."]; *Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758, 766, fn. 5 [referring to "the authority granted trial courts in . . . section 1005 to shorten the notice period"]; Cal.

15

Rules of Court, rule 3.1300(b) ["The court, on its own motion or on application . . . may prescribe shorter times for the filing and service of papers than the times specified in Code of Civil Procedure section 1005"].) By deciding Malan's sanctions motion on the merits, notwithstanding that the notice was filed one day late, the trial court impliedly exercised its discretion to allow the motion to be heard on shortened notice.

Razuki has failed to demonstrate that the trial court abused its discretion in making this ruling. "The principal purpose of the requirement to file and serve a notice of motion a specified number of days before the hearing [citation] is to provide the opposing party adequate time to prepare an opposition. That purpose is served if the party appears at the hearing, opposes the motion on the merits, and was not prejudiced in preparing an opposition by the untimely notice." (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 343.) For due process purposes, moreover, the question whether notice is adequate does not depend on "an arbitrary number of days notice but should be determined on a case-by-case basis to satisfy basic due process requirements." (*In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1422.)

On this record, the purposes of the statutory notice requirement and the requirements of due process were fully satisfied. Razuki never requested additional time to respond to the sanctions motion. Rather, Razuki filed a brief opposing Malan's motion, attached his attorney's declaration, and also objected to Malan's and Demergian's declarations. The grounds for the motion were the same as the grounds for Malan's earlier 2019 motion, which was fully briefed and was based on the same criminal conduct. Not only did Razuki's attorney appear at the noticed hearing and address the merits of Malan's second motion, but he also chose not to argue about the motion's

16

timeliness at the hearing and never explained how he had been prejudiced by the one-day delay. Even on appeal, Razuki still makes no argument as to how he was prejudiced by the one-day delay, and there is no indication in the record that he lacked a sufficient opportunity to prepare his opposing papers or be heard before the imposition of sanctions. (See *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 ["we cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice"]; cf. *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 996 ["section 128.5 requires notice and opportunity to be heard prior to imposition of sanctions[]".) We therefore conclude that the trial court did not abuse its discretion by considering Malan's motion on the merits.

IV

Razuki next argues that Malan failed to adequately state and justify the amount of sanctions requested. As an initial matter, we disagree with Razuki's contention that section 2023.040 required that Malan's notice of motion state the specific dollar amount of the sanctions sought. Section 2023.040 addresses sanctions for *discovery* abuses, which are not at issue here because Malan requested sanctions under section 128.5 for bad faith actions or tactics. (See *Howell, supra*, 18 Cal.App.5th at pp. 194–195 [differentiating between discovery sanctions under section 2023 and sanctions under section 128.5].) As noted, section 128.5 expressly excludes from its purview "disclosures and discovery requests, responses, objections, and motions," and only requires that a movant "describe the specific alleged *action or tactic*, made in bad faith, that is frivolous or solely intended to cause unnecessary delay." (§ 128.5, subds. (e), (f)(1)(A) (italics added).) The statute

17

contains no requirement that the notice of motion set forth the specific dollar amount of sanctions requested.

Even if section 2023.040 applied here, it only requires that a notice of motion for sanctions "identify every person, party, and attorney against whom the sanction is sought, and specify the *type* of sanction sought." (§ 2023.040 (italics added).) Malan's notice of motion stated that he was seeking "terminating, or in the alternative monetary" sanctions against Razuki "for attempting to have MALAN executed[.]" The notice thus would have satisfied both section 128.5's and section 2023.040's requirements, even if applicable. Moreover, Malan's declaration in support of the motion indicated he was seeking sanctions of at least $200,000. For these reasons, we disagree with Razuki's contention that Malan's motion was procedurally defective on that ground.

We conclude, however, that the trial court abused its discretion by awarding $200,000 in sanctions payable to Malan for "reasonable litigation expenses for [] Razuki's bad faith actions and tactics" without any evidence that the amount bore any connection to Razuki's misconduct. We requested supplemental briefing from the parties on whether the award reflected an amount incurred "as a direct result" of Razuki's sanctionable conduct, as required by section 128.5, subdivision (f)(2). Our order quoted and italicized the relevant portion of subdivision (f)(2), which provides that the sanctions imposed "may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of *the reasonable attorney's fees and other expenses incurred as a direct result of the action or tactic described in subdivision (a)*." (§ 128.5, subd. (f)(2) (italics added).)

In his letter brief, Razuki asserted that Malan had failed to demonstrate that the $200,000 sanctions awarded by the trial court were for fees and expenses incurred "as a direct result" of his sanctionable conduct within the meaning of section 128.5, subdivision (f)(2). By contrast, Malan's letter brief did not discuss subdivision (f)(2) and made no attempt to show that the $200,000 was incurred "as a direct result" of Razuki's conspiracy to kidnap him. Instead, Malan cited *Kravitz* to argue that section 128.5 sanctions need not be "related to the size of the recovery or the amount of time billed by the attorney." (*Kravitz, supra*, 91 Cal.App.4th at p. 1019.)

But *Kravitz* and *Abandonato*, which is cited in *Kravitz*, merely make the point that sanctions are not *limited* to attorney fees, and may include other "reasonable expenses," such as "compensation for time spent by the party's employees or as compensation for airfare and reimbursement for lost vacation time[.]" (*Kravitz, supra*, 91 Cal.App.4th at p. 1019, citing *Abandonato v. Coldren* (1995) 41 Cal.App.4th 264, 268–269 (*Abandonato*).) For those expenses to be awarded as sanctions under section 128.5, subdivision (f)(2), they must still be " 'incurred *as a result of* bad faith actions.' " (*Abandonato*, at p. 268 (italics added).) The Court of Appeal in *Abandonato* explained that a judgment for sanctions under section 128.5 "could be greater than the amount of attorney time actually billed" and "is more like a money judgment compensating a party for harmful conduct than it is like an award of fees as part of the costs of the lawsuit." (*Abandonato*, at pp. 268–269; see also *Tenderloin Housing Clinic, Inc. v. Sparks* (1992) 8 Cal.App.4th 299, 307–308 ["expenditure and loss proximately resulting from the frivolous acts or tactics of appellant[,]" including airfare and lost vacation time, "constituted reasonable expenses within the statutory definition and were properly awarded as sanctions under section 128.5"].) Therefore,

19

contrary to what Razuki argues, *Kravitz* and *Abandonato* do not support the conclusion that an award of attorney fees and expenses under section 128.5, subdivision (f)(2), need not bear any causal relationship to the "action or tactic" being sanctioned. (§ 128.5, subd. (f)(2).) Such an interpretation would contradict the plain language of subdivision (f)(2).

Here, there is no evidence that the $200,000 award was in any way related to Razuki's bad faith acts. Indeed, exchanges between the trial court and Malan's counsel at the motion hearing indicate that the amount was arbitrarily chosen based on what was "sitting in trust." While Malan and his counsel both claimed that their fees and expenses ranged from $100,000 to more than $300,000 at various times, neither explained where those amounts came from or how they were attributable to the conspiracy to kidnap Malan. Unlike with Malan's first motion for sanctions, Malan and Demergian failed to show whether the fees and expenses were incurred, for example, because of additional legal tasks or missed workdays necessitated by Razuki's plot to kidnap and murder or intimidate Malan. Demergian even disclaimed responsibility for having to provide such an account of his fees at the hearing, dismissing the idea as "ridiculous." While we recognize the trial court's broad discretion in awarding sanctions, sanctions purportedly awarded to a party for "reasonable attorney's fees and other expenses" under section 128.5, subdivision (f)(2), cannot be wholly untethered to the behavior the sanctions are meant to deter. In the absence of evidence connecting the $200,000 award to Razuki's sanctionable conduct, we conclude the court abused its discretion and the award to Malan must be vacated.

We note, however, that the statute does alternatively allow "an order to pay a penalty into court" in an amount "sufficient to deter repetition of the action or tactic or comparable action or tactic by others similarly

20

situated . . . ." (§ 128.5, subd. (f)(2).)  The plain language of the statute does not require that such a penalty payable to the court be tethered to the costs incurred by the opposing party as a result of the sanctionable conduct.  On remand, therefore, the court must be given the opportunity to decide whether to impose sanctions payable to the court as a penalty and/or permit the parties to present additional evidence justifying a sanctions award payable to Malan based on "the reasonable attorney's fees and other expenses incurred as a direct result" of sanctionable acts under section 128.5, subdivision (f)(2).  We express no view on how the court should exercise its discretion on these matters on remand.

V

Lastly, we are not persuaded by Razuki's argument that the trial court violated his Fifth Amendment rights by granting Malan's motion while his criminal appeal was still pending.

A civil defendant facing related criminal charges has no constitutional right to avoid prosecution of the civil case or the imposition of civil penalties pending the outcome of the criminal prosecution.  "The self-incrimination privilege is not applicable to matters that will subject a witness to civil liability."  (*Blackburn v. Superior Court* (1993) 21 Cal.App.4th 414, 426.)  "Whatever their response to requests for accommodation of the conflicting constitutional rights of a defendant in concurrent civil and criminal proceedings, courts have consistently refrained from recognizing any constitutional need for such accommodation."  (*People v. Coleman* (1975) 13 Cal.3d 867, 885, italics omitted (*Coleman*); see also *Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 882 ["It is clear . . . that staying a civil discovery process to await the outcome of a related criminal case does not implicate constitutional issues, even when the defendant raising the question

21

is an individual defendant . . . ."].)  In some circumstances, a defendant in a civil proceeding "may be required either to waive the [Fifth Amendment] privilege or accept the civil consequences of silence if he or she does exercise it." (*Alvarez v. Sanchez* (1984) 158 Cal.App.3d 709, 712.)  "[T]he fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter.  Justice is meted out in both civil and criminal litigation.  The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied)." (*Coleman*, at p. 885.)

Here, Razuki has not demonstrated that the trial court abused its discretion in deciding to rule on the motion for sanctions rather than stay the sanctions proceedings while his criminal appeal was pending. In such circumstances, the court must make a discretionary judgment weighing a variety of factors, including the plaintiff's and the court's interests in fair and expeditious resolution of the case and efficient use of judicial resources. (*Fuller v. Superior Court* (2001) 87 Cal.App.4th 299, 306; see also *People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 951–952; *Alpha Media Resort Investment Cases* (2019) 39 Cal.App.5th 1121, 1132.) Razuki has failed to address these factors and made no effort to demonstrate that they compelled a discretionary stay. He also did not provide the trial court, or our court, with any specific bases for asserting the privilege against self-incrimination. (See *Warford v. Medeiros* (1984) 160 Cal.App.3d 1035, 1045 ["The reason for the requirement that the person claiming the privilege must object with specificity to the information sought from him is that only where this is done is the trial court enabled to make a particularized inquiry required of it."].) He has only made blanket assertions that providing evidence in opposition to the motion for sanctions would somehow implicate the privilege.

Furthermore, several factors support the court's decision to rule on the motion. Malan's first motion for sanctions had already been denied as premature, considering the nascency of the criminal proceedings. In contrast, by the time Malan filed his second motion for sanctions, Razuki had already pled guilty and had been sentenced to seven years in federal prison. Razuki did not dispute that, with only narrow exceptions, he generally waived his right to appeal when he pled guilty. Razuki's attorney also admitted at the motion hearing that he did not know the basis for the criminal appeal—and he did not assert that the guilty plea was involuntary or coerced. Under

23

these circumstances, we conclude that the trial court's decision to allow Malan's second motion for sanctions to proceed was not an abuse of discretion.

## DISPOSITION

The finding of sanctionable bad faith conduct is affirmed, but the award of $200,000 in sanctions payable to Malan is reversed.  The matter is remanded to the trial court to exercise its discretion whether to impose sanctions as a penalty payable to the court under section 128.5, subdivision (f)(2) and/or permit the parties to present additional evidence justifying a sanctions award payable to Malan.  The parties shall bear their own costs on appeal.


BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.